[No. A087250. First Dist., Div. Five. Mar. 23, 2000.]

PACIFIC BELL, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent.

**COUNSEL**

Pillsbury, Madison & Sutro, Kevin M. Fong and Reed E. Harvey for Petitioner.

Stephen E. Pickett and Janine M. Watkins-Ivie for Southern California Edison Company as Amicus Curiae on behalf of Petitioner.

Peter Arth, Jr.; Mary McKenzie; Lynne P. McGhee; Joel T. Perlstein; and Geoffrey B. Dryvynsyde for Respondent.

**OPINION**

**HANING, J.**—This petition for writ of review, one of the first presented to the Court of Appeal under jurisdiction recently established by Public Utilities Code section 1756,[1] raises an important issue of appellate procedure. Where the Legislature has authorized a writ of review as the exclusive method of challenging a Public Utilities Commission (PUC or commission) decision, must the Court of Appeal grant the writ, examine the PUC's certified record, provide oral argument, and decide the matter by written opinion each time an applicant presents a procedurally proper writ petition? We conclude we may elect to follow these procedures for the benefit of the parties or the public, but that we need not do so if the petitioning party fails to present a convincing argument for annulment of the PUC's decision.

Pacific Bell is a public utility providing, inter alia, telephone service and is subject to PUC regulation. It filed an "advice letter" with the PUC attempting to amend a tariff to remove references to nonregulated "yellow pages." The PUC required Pacific Bell instead to file a formal application to change the tariff in question. Rather than file a formal application, Pacific Bell elected to seek rehearing by the PUC of its decision rejecting the advice letter. The rehearing petition was a prerequisite to challenging the commission's resolution in court, as Pacific Bell has now done. (§ 1756, subd. (a).) We conclude the commission acted within its authority when it required a formal application to change the tariff.

We find it unnecessary to issue a writ of review to decide that the PUC acted within its procedural authority. The substantive issue is not sufficiently significant to address at this preliminary stage, before Pacific Bell has followed the PUC's directive to present the matter by formal application. We

---

[1]Except as otherwise indicated, all further statutory references are to the Public Utilities Code.

issue this opinion with the expectation that our resolution of the procedural question will assist other litigants.

## BACKGROUND

### The Current Yellow Pages Situation

As the telecommunications industry has evolved, Pacific Bell has begun to move away from the one-volume telephone directory, which combines both an alphabetical listing of customers (white pages) and a collection of commercial service listings arranged by category (yellow pages). In its place, in larger markets including San Francisco, Los Angeles and several others, Pacific Bell offers separate volumes for white and yellow pages.

According to the parties (whose assertions we accept because they have not provided copies of all relevant parts of the tariffs), Pacific Bell is required to provide white pages free of charge to all customers in the area affected by each telephone directory (service area customers). Pacific Bell may also offer white pages to "foreign" customers, meaning those outside the affected areas, and may charge these foreign customers the amounts specified in the tariff, which range from $4.20 to $13.30 per directory.

Section 728.2 prohibits the PUC from regulating telephone directory advertising. Consequently, the tariffs do not expressly regulate yellow pages. Nevertheless, because historically the two directories have been bound together, the price list included in Pacific Bell's tariff, prior to the proposed change in issue here, has listed each directory locale followed, in most cases, by an "x" in the column "yellow pages included" and then the price established by the tariff for that (combined) volume.

### Pacific Bell's Proposed Change

Pacific Bell proposes to alter the status quo by binding all white and yellow pages separately. It will continue to provide the white pages free to service-area customers and continue to charge the tariff prices for foreign customers requesting white pages outside their service area. Pacific Bell proposes to merely excise from the tariff the words "yellow pages included" and the corresponding "x's" wherever they appear. Pacific Bell has not said how it intends to market or distribute its yellow pages, which would not be governed in any way by tariff.

### Procedure for Changing a Tariff

Section 489, subdivision (a), requires every public utility to file with the PUC a tariff—a schedule "showing all rates, tolls, rentals, charges, and

classifications . . . together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service." Such a tariff, when approved by the PUC, has the force of law. (*Trammell v. Western Union Tel. Co.* (1976) 57 Cal.App.3d 538, 549-550 [129 Cal.Rptr. 361].) Only by following procedures specified in or developed under section 454 may the utility then change its published tariff. (*Wood v. Public Utilities Commission* (1971) 4 Cal.3d 288, 292-293 [93 Cal.Rptr. 455, 481 P.2d 823].)

Section 454, subdivision (a) requires in most cases notice to customers and an "application to the commission for approval" of any new rate or any request to so alter any rule or practice as to result in a new rate. However, "[t]his notice requirement does not apply to any rate change proposed by a corporation pursuant to an advice letter submitted to the commission in accordance with commission procedures for this means of submission." (*Ibid.*) Section 454, subdivision (b) authorizes the PUC to adopt reasonable rules of procedure to be followed by each class of public utility in making its showing to the commission.

Rules 23 and 24 of the PUC's Rules of Practice and Procedure establish the procedures for a formal application to change a tariff. The less formal "advice letter" procedures are set forth in PUC General Order No. 96-A (GO 96-A). A formal application must be used to raise rates unless the increase is "minor in nature," in which case "the commission may accept a showing in the advice letter provided justification is fully set forth therein." (GO 96-A, ¶ VI.) The advice letter must "call attention to each increase or decrease in rate or charge, or change in condition which may result in an increase or decrease, more or less restrictive conditions, or withdrawal of service. . . . [¶] If the tariff schedules as filed will result in an increase or decrease in revenues, the advice letter should give an estimate of the annual revenue effect thereof." (GO 96-A, ¶ IIIC.)

*Pacific Bell's Advice Letter*

Pacific Bell's advice letter followed the format requirements. It listed the tariff sheets affected by the proposed change and attached the changed sheets with changes marked. The tariff sheets showed that the changes affected 49 of Pacific Bell's 60 local phone directories.[2] However, the letter itself was brief, stating only that the filing would revise the tariff to

---

[2]Directories for Oakland and other East Bay communities, Palo Alto, Sacramento, San Francisco, San Jose-Santa Clara, most of San Mateo County, Los Angeles Central Section, Los Angeles Extended Area, Orange County, San Diego and San Diego North County apparently are already separately bound and are not affected by the proposed change.

eliminate the references stating "yellow pages included." It explained that "[t]he yellow page directories were previously referenced because they were co-bound and provided with the white page directory at no additional cost. Yellow page directories are not regulated and are not tariffed. [¶] The alphabetical or 'white page' telephone directory is the tariffed product and will be provided as a separately bound directory. [¶] The revision will not alter the Utility's tariff obligation to provide alphabetical or white page directories at no charge . . . . [¶] There are no revenue impacts associated with this filing. . . . [¶] This filing will not increase any rate or charge, cause the withdrawal of service, nor conflict with other schedules or rules."

*Protests Against the Advice Letter*

Two organizations filed letters protesting Pacific Bell's advice letter. The Office of Ratepayer Advocates (ORA), a subdivision of the PUC charged with representing the interests of customers (§ 309.5), disputed Pacific Bell's claim that there would be no revenue impact. ORA noted that customers would now have to pay an extra charge for yellow page directories while paying the same amount for the white pages. ORA called on Pacific Bell to disclose its estimate of increased revenue from this change. ORA also predicted increased use of directory assistance because of this change and the contemporaneous shrinking of precincts for area codes, adding to Pacific Bell's revenues. ORA asserted that Pacific Bell was obligated to "gauge the deleterious financial and service impacts its proposals will have on the ratepayers," which it had not done in its advice letter.

The Utility Reform Network (TURN), a nonprofit consumer organization, also protested. TURN complained that Pacific Bell had provided no justification for assessing the same price for a white pages directory that it previously charged for a combined directory, calling this a diminution of service. TURN disputed Pacific Bell's claim of no revenue impact, asserting that Pacific Bell would receive more revenue from directory assistance, and suggesting Pacific Bell might also charge for yellow page directories.

*Pacific Bell's Reply*

By letter, Pacific Bell criticized ORA's and TURN's assumptions that directory assistance calls would increase, contending that these assumptions were "not based on facts." Pacific Bell insisted that it was free to charge for yellow pages if it chose and that because the commission has no jurisdiction over yellow pages, Pacific Bell was not required to show the financial impact of a change in yellow pages' publishing methods. Pacific Bell interpreted the existing tariff prices to cover only white pages, and explained

that the tariff merely noted those situations where the yellow pages were included in the directory. With this line of reasoning, Pacific Bell rejected ORA's claim that the customer would receive a product of diminished value.

*The Commission's Decisions*

On December 17, 1998, less than two months after the protests were lodged, the PUC issued a resolution rejecting the advice letter and suggesting that, should it desire to do so, Pacific Bell might file an application to request the changes it sought by the advice letter. After describing the controversy, the PUC resolved it: "Protestants have raised significant questions about the revenue neutrality and the potential adverse impacts to ratepayers . . . . Although yellow page directory rates have been deregulated by [section] 728.2, the commission considers directory revenues 'above-the-line' for ratemaking purposes. The advice letter filing raises a sufficient level of controversy that has not been sufficiently addressed in Pacific's filing. TD [telecommunications division of the PUC] recommends that the commission reject Pacific [Bell]'s Advice Letter . . . and not approve Pacific [Bell]'s requested change without a more complete showing of its effects on ratepayers via an application filing. . . . Given the protests, controversy and unknown potential impacts on ratepayers surrounding Pacific [Bell]'s [advice letter], we concur with TD's recommendation . . . ."

Pacific Bell filed an application for rehearing of the resolution, satisfying the condition precedent to this writ petition. Pacific Bell contended that: (1) the PUC lacked jurisdiction over yellow pages, (2) because Pacific Bell's rate of return is not regulated, the change would not have an effect on rates even if it caused Pacific Bell's revenues to increase, and (3) Pacific Bell should not be the only yellow page publisher out of 52 publishers in the state to be mandated to give them away.

On May 13, 1999, the PUC issued its decision denying rehearing. The PUC explained that, in rejecting the advice letter, it was not taking jurisdiction over rates for yellow page directories in violation of section 728.2 but was considering yellow page revenues while exercising its jurisdiction over rates for other services. This timely petition followed.

## DISCUSSION

"By amendments effective January 1, 1998 (Stats. 1996, ch. 855, §§ 1-26), litigants [challenging PUC decisions] are no longer restricted to seeking review in the California Supreme Court. They may petition the Court of Appeal for the district in which they reside or establish their principal place

of business. (Pub. Util. Code, § 1756, subds. (b) & (e)).” (*North Shuttle Service, Inc. v. Public Utilities Com.* (1998) 67 Cal.App.4th 386, 389 [79 Cal.Rptr.2d 46].)

Section 1756, subdivision (a) provides that any aggrieved party may petition this court or the Supreme Court for writ of review to inquire into the lawfulness of any commission order or decision. Although the section sets forth no standards for the appellate court's decision to grant or deny review, it implies that not all petitions will succeed in securing review of the commission's proceedings. It states that *if* the writ issues, certain actions will ensue.

## I

 Although Pacific Bell did not explicitly argue the point until asked by this court to address the question in supplemental briefing, its petition quotes legislative materials equating a petition for writ of review with “an appeal” to the Court of Appeal “as a matter of right” and suggests that the writ will issue in every case unless the petition is procedurally defective. Before addressing the merits of this controversy, we consider whether this legislative language accurately describes the procedures for review of PUC decisions.

Pacific Bell quotes from a Senate Floor Analysis prepared in August 1996, the subject of which was Senate Bill No. 1322 (1995-1996 Reg. Sess.) (hereafter Senate Bill 1322), the measure first extending PUC review jurisdiction to the Court of Appeal. The report repeatedly used the term “appeal” when describing review of PUC decisions by both the Supreme Court and Court of Appeal and described then existing law as providing that “a PUC decision may be appealed . . . by filing a writ of certiorari or petition for review by the State Supreme Court [which] has the discretion whether to grant the writ or petition.” (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1322 (1995-1996 Reg. Sess.) Aug. 28, 1996. p. 5.) (Senate Rules Committee Report.)

According to the report, the new measure “would instead provide for an appeal to a court of appeal as a matter of right. The bill would require the appellate court to issue a writ of review and to review the PUC decision unless, upon examination of the record and the petition, the court of appeal determines that the petition is procedurally deficient and denies the petition.”

The report also described the arguments of proponents of the legislation: “Proponents of the bill assert that SB 1322 is necessary to protect the due process rights of parties appearing before the Public Utilities Commission (PUC). Under existing law, the California Supreme Court is the court of

original jurisdiction for appeals from PUC decisions and has total discretion whether or not to accept appeals. According to proponents, the Supreme Court has not granted a petition to review a PUC decision since 1990. Of 49 writ petitions filed between 1990 and mid-1994, 2 petitions were dismissed as being moot and the other 47 were summarily denied. In a manner of speaking, proponents argue, the Supreme Court's refusal to review PUC decisions leads to the false impression that the PUC has not committed legal error since 1990. Proponents contend that the practical effect, however, is that the failure has effectively denied due process to PUC intervenors. [¶] This bill would grant a court of appeal jurisdiction to hear PUC appeals. A decision of the court of appeal could be appealed to the Supreme Court in the same manner as any other appeal from the lower court." (Sen Rules Com. Rep., *supra*, p. 10.)

Although this analysis furnishes interesting insight into the thinking of some person or persons connected with the legislative branch, it is largely beside the point because the legislation in question cannot be interpreted in the manner suggested by this morsel of legislative history. We conclude the Legislature has not changed the procedures for seeking review, but only the likely recipient of a petition for writ of review.

In its pertinent part, section 1756, subdivision (a) provides simply that "any aggrieved party may petition for a writ of review in the court of appeal or the Supreme Court for the purpose of having the lawfulness of the original order or decision or of the order or decision on rehearing inquired into and determined. If the writ issues, it shall be made returnable at a time and place specified by court order and shall direct the commission to certify its record in the case to the court within the time specified."

This wording replaces the portion of the prior statute stating: "the applicant may apply to the Supreme Court of this state for a writ of certiorari or review for the purpose of having the lawfulness of the original order or decision or of the order or decision on rehearing inquired into and determined. The writ shall be made returnable at a time and place then or thereafter specified by court order and shall direct the commission to certify its record in the case to the court within the time therein specified." (Stats. 1983, ch. 377, § 2, p. 1601.)

A comparison of the current and former statutes reveals only three changes of arguable significance: (1) writ of certiorari is dropped, (2) the Court of Appeal is added, and (3) the statute now says "if the writ issues" before it states what the writ shall direct. Dropping "writ of certiorari" is inconsequential because "[t]he writ of certiorari may be denominated the writ of review." (Code Civ. Proc., § 1067.) Adding the Court of Appeal is

significant to the courts and to the parties, but it does not change the nature of the review prescribed for PUC proceedings. It means only that the litigant may petition either the Court of Appeal or the Supreme Court for the same kind of review formerly available from only the Supreme Court.

Adding the words "if the writ issues" may mean either of two things: (1) the Legislature wished to make explicit what was implicit in the former statute, that the writ need not issue in all cases, or (2) the Legislature decided to change the statute to reflect the Supreme Court's practice of issuing the writ only in selected cases and summarily denying petitions in the others. We realize that neither of these meanings coincides with the ordinary definition of the term "appeal" in the Senate Floor Analysis quoted above. However, if the Legislature intended to depart from the Supreme Court's assumed "total discretion" and to make review a matter of right in the Court of Appeal akin to an ordinary appeal, it did not amend the statute in a way capable of producing that result. It authorized the Court of Appeal to conduct the same kind of review it had formerly restricted to the Supreme Court.[3]

Although the statutory language needs no further explanation, we note that the legislative history, viewed in its entirety, supports our interpretation. Significantly, the April 17, 1995 version of Senate Bill 1322, which was introduced March 7, 1995, by Senator Charles M. Calderon, included language stating that "[t]he writ shall issue, and the decision shall be reviewed, unless, upon examination of the record and the petition, the court of appeal determines that the petition is procedurally deficient, in which case the court shall deny the petition and issue an opinion stating the reasons for the denial. When the writ is issued, it shall direct the commission to certify its record . . . ." (Sen. Amend. to Sen. Bill No. 1322 (1995-1996 Reg. Sess.) Apr. 17, 1995.) The Judicial Council opposed the bill in its April 17, 1995 form. ▮▮▮▮ However, the council dropped its opposition when the measure was amended to its current form, stating that it perceived these later amendments to "provide for discretionary writ review rather than direct appeal as a matter of right." (Judicial Council Legis. Policy Analyst Carrie Cornwell, letter to Assem. Appropriations Com. Chair Charles Poochigian, Aug. 16, 1995.)[4]

▮▮ Close scrutiny of the Senate Floor Analysis and other available legislative materials suggests that, although the floor analysis was prepared in August 1996, it analyzed the bill in its April 17, 1995 form, not as

---

[3]The Legislature has shown that it knows how to provide for an appeal. When it provides writ proceedings instead, its intent should not be frustrated by imposing procedures virtually identical to appeal. (*Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1511 [45 Cal.Rptr.2d 805].)

[4]Successive drafts before the Legislature may be helpful in interpreting a statute when its meaning is unclear. (*State Farm Mut. Auto. Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, 236 [252 Cal.Rptr. 162].)

amended two months later and eventually adopted by the Legislature.[5] The report by the Assembly Committee on the Judiciary for its July 12, 1995 hearing more accurately stated that the Judicial Council had removed its opposition as a result of the amendments to its current form, under which review was by discretionary writ, not appeal.[6]

## II

■ The statement of legislative intent adopted by the 1998 PUC legislation and printed along with the changed statutes raises another question about appellate procedure. When it adopted this legislation expanding Court of Appeal jurisdiction beyond the PUC's adjudicative decisions, the Legislature announced an intent "to conform judicial review of the Public Utilities Commission decisions that pertain to utility service providers with competitive markets to be consistent with judicial review of the other state agencies." (Stats. 1998, ch. 886, § 1.5, subd. (b).)

This commentary does not address two significant factors: (1) review of the various other state agencies takes several different forms, and (2) the PUC statute does not precisely follow the form adopted for any other agency.[7] We asked the parties to brief the meaning of this printed statement of legislative intent, and accept their uniform interpretation of this language.

---

[5]*Comparing this report to the earlier Senate Judiciary Committee report for its April 18, 1995 hearing suggests that the author of the later report may merely have copied portions of the earlier report analyzing a discarded version of the statute.* We are reminded that in this "cut and paste" electronic world, a scribe's comments may not reflect original thoughts or firsthand reporting of events so much as the scribe's ability to collect and (perhaps carelessly) disseminate the writings of others. Our review of this legislative history redoubles our skepticism about looking beyond the statutory language when trying to discern the Legislature's meaning. (See *Conroy v. Aniskoff* (1993) 507 U.S. 511, 517-519, 527-528 [113 S.Ct. 1562, 1566-1567, 1571-1572, 123 L.Ed.2d 229] (conc. opn. of Scalia, J.).)

[6]*Senator Calderon, when subsequently recommending the Governor sign Senate Bill No. 779 (1997-1998 Reg. Sess.), which expanded the categories of cases that could be brought to this court, correctly stated that* "[t]he petition to the District Court of Appeal would be discretionary with the court." This suggests that at least the author realized that the bill he introduced no longer provided an "appeal" as a matter of right.

[7]Review of a state agency decision is typically by petition for writ of administrative mandamus to the superior court, with appeal of that decision to the Court of Appeal. (Code Civ. Proc., § 1094.5.) Although traditional writ of review (Code Civ. Proc., § 1067) is technically available in the state agency review setting, such proceedings are rare because the writ normally will not issue unless the agency exceeds its jurisdiction and no remedy by appeal is available. (Code Civ. Proc., § 1068.) In those rare cases, certiorari—writ of review—may be denied without production of the record or opinion. (*Lavore v. Industrial Acc. Com.* (1938) 29 Cal.App.2d 255, 258 [84 P.2d 176].)

Several agencies are subject to review procedures somewhat similar to the PUC's, but each statute has its own wrinkles. Labor Code section 1160.8, the Agricultural Labor Relations

Both parties interpret the language of Statutes 1998, chapter 886, section 1.5, subdivision (b) to refer primarily to replacing the "any evidence" test of *Camp Meeker Water System, Inc. v. Public Utilities Com.* (1990) 51 Cal.3d 845 [274 Cal.Rptr. 678, 799 P.2d 758] with the substantial evidence standard for review, not to announce an intent to make the procedural path for review the same for the PUC as for other state agencies.

The review method selected for PUC cases by the Legislature benefits both the courts and the parties. It permits the courts to deny summarily those petitions which lack merit and do not raise important issues, and to concentrate their oral argument and opinion writing resources on the meritorious petitions and those nonmeritorious petitions that raise issues significant to the development of the law. It furnishes the parties a quicker and less expensive means than appeal for having the commission's decisions examined by the appellate courts.

Although the Legislature did not establish a right to full-blown review by the Court of Appeal, it substantially met the goals expressed in even the early reports, which assumed there would be an appeal-like form of review. The Legislature significantly increased the odds a writ would issue in a given case by directing PUC petitions to a court that could absorb them more easily. Instead of directing all petitions to a seven-justice court with a limited docket, where PUC petitions would compete with automatic appeals in death penalty cases and with petitions for review seeking to clarify and reconcile California law on a variety of subjects, the Legislature spread the petitions throughout six appellate districts consisting of nearly 90 justices. The impact

---

Board's (ALRB) review statute, provides that an aggrieved person may "obtain a review" by petitioning the Court of Appeal. Upon filing the petition, the court serves the board, which certifies the record. By rule 59, California Rules of Court, the petitioner then files a brief in support of the petition, and respondent files a response. These petitions are in the nature of writ of review or writ of mandate and may be denied without opinion or oral argument. (*Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 351 [156 Cal.Rptr. 1, 595 P.2d 579].)

Government Code section 3542 authorizes review of decisions of the Public Employment Relations Board by a "petition for extraordinary relief." Although the wording is different, the review procedures are the same as for the ALRB.

The statute authorizing review of decisions of the Workers' Compensation Appeals Board, Labor Code section 5950, is a closer analogy to the PUC statute. It authorizes a writ of review. The Court of Appeal evaluates the petition and if the court grants the writ, the board certifies the record, which the court then reviews. As with the other review procedures, however, the court may deny the petition by order without obtaining the record or holding argument (see *Johnson v. Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 235, 239-240 [207 Cal.Rptr. 857, 689 P.2d 1127]). It will deny the petition summarily if the application does not show grounds for annulment of the board's decision.

of the PUC caseload clearly will be felt less by the Court of Appeal, which can afford to devote more time to each PUC case.[8]

### III

■ Having concluded that we are not compelled to issue the writ if the PUC did not err,[9] we next consider whether the PUC's ruling is subject to annulment on any of the grounds stated in section 1757, subdivision (a). That provision authorizes us to determine "whether any of the following occurred: [¶] (1) The commission acted without, or in excess of, its powers or jurisdiction. [¶] (2) The commission has not proceeded in the manner required by law. [¶] (3) The decision of the commission is not supported by the findings. [¶] (4) The findings in the decision of the commission are not supported by substantial evidence in light of the whole record. [¶] (5) the order or decision of the commission was procured by fraud or was an abuse of discretion. [¶] (6) The order or decision of the commission violates a right of the petitioner under the Constitution of the United States or the California Constitution."

Only (1) and (2) above are arguably applicable to the subject PUC decision, which was procedural in nature. The PUC definitively determined only that Pacific Bell's advice letter was not the correct vehicle for accomplishing the tariff change Pacific Bell proposed. It did *not* reject the change on the merits. Without once mentioning the difference between an advice letter and a formal application for a tariff change or conceding any significance to the fact that the PUC left the latter procedure open, Pacific Bell contends that the PUC has violated section 728.2, subdivision (a) by regulating yellow pages. In essence, Pacific Bell has sought to convert the PUC's procedural decision into a substantive decision and has attacked substance rather than procedure.[10]

Whether a utility may proceed by an advice letter or instead must file a formal application for a particular tariff change is a decision peculiarly

---

[8]Any suspicions that the courts may deny writ petitions capriciously are unfounded. As explained in *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 901 and footnote 3 [160 Cal.Rptr. 124, 603 P.2d 41], these petitions in PUC cases "serve[] in effect the office of an appeal." Therefore, unlike prerogative writs such as prohibition or mandate, they are not to be summarily denied "on policy grounds unrelated to their procedural or substantive merits." (See also *In re Rose* (2000) 22 Cal.4th 430, 448-455 [93 Cal.Rptr.2d 298, 993 P.2d 956].)

[9]We also are not compelled to conduct oral argument on the petition (see *Joyce G. v. Superior Court, supra,* 38 Cal.App.4th at pp. 1514-1515) and have elected not to.

[10]If this glossing over by petitioner of the distinction between a procedural ruling and a substantive ruling is routine in PUC matters, it is incumbent upon petitioner to advise this court of (1) the pattern of disregarding the kind of distinctions we draw when reviewing decisions of other tribunals and (2) how the PUC legislation can be read to meld substance with procedure in this way.

within the PUC's expertise and judgment (*Wood v. Public Utilities Commission, supra,* 4 Cal.3d at pp. 292-293), not this court's. We will not disturb the PUC's selection between the procedures absent a manifest abuse of discretion or an unreasonable interpretation of the statutes governing its procedures (see *Greyhound Lines, Inc. v. Public Utilities Com.* (1968) 68 Cal.2d 406, 410-411 [67 Cal.Rptr. 97, 438 P.2d 801]). We see neither here.

As outlined above, section 454, subdivision (a) refers to the "application" and "advice letter" procedures, and subdivision (b) authorizes the PUC to adopt reasonable rules of procedure governing them, which the PUC has done. Under its procedures, the PUC "may accept a showing in the advice letter provided justification is fully set forth therein." (GO 96-A, ¶ VI.) Implicitly, the PUC may reject the showing in an advice letter if the justification is not set forth fully. The PUC made such a decision in this case.

The advice letter must call attention to any change in condition which may result in a "withdrawal of service" and must "give an estimate of the annual revenue effect" of its proposal. (GO 96-A, ¶ IIIC.)

Pacific Bell's advice letter is deficient in its explanation of services that were being withdrawn and the effect the change would have upon revenues. Although it stated there was no withdrawal of service and "there are no revenue impacts," these statements could be made only by ignoring the facts. The facts were that before the tariff change, foreign customers could obtain both white and yellow pages for the tariff's single fee, and service-area customers obtained yellow pages free because they were bound with the free white pages. Afterward, both groups would be subject to new charges unless Pacific Bell elected to provide them free. Service as it previously existed, whether mandated by law or not, would diminish.[11] If this change takes place, additional yellow pages revenues will be generated (unless no yellow pages are sold) because Pacific Bell will be dividing the volumes and maintaining the same price for the white pages as formerly applied to both white and yellow page directories.

## DISPOSITION

The PUC acted within its discretion when it denied the advice letter's proposed change for lack of the requisite showing and as procedurally inapt for the significant changes proposed.

---

[11]Pacific Bell's petition draws us into an interesting exercise in semantics. Pacific Bell repeatedly says that yellow pages are not "tariffed," but at the same time admits that the tariff mentions them and that the advice letter sought to remove yellow pages from the tariff. It appears, therefore, that the term "tariffed" is sometimes used to mean "regulated," rather than "covered by the existing tariff," as common usage of the term would provide.

Although Pacific Bell presents an argument that section 728.2 does not grant the PUC jurisdiction over advertising revenues generated by the yellow pages and the PUC responds to Pacific Bell's argument, we consider this debate premature. The PUC decision under scrutiny has determined only that the PUC will not approve the requested change "without a more complete showing of its effects on ratepayers via an application filing." It has not rejected Pacific Bell's proposed change in handling phone directories. If and when such an application is filed and Pacific Bell has made a full showing of the revenue and service impacts, the parties may address the meaning of section 728.2 and whether and to what extent the PUC may consider potential yellow page revenues when deciding whether to permit the tariff change.

The petition for writ of review is denied.[12]

Jones, P. J., and Stevens, J., concurred.

---

[12]Although we have taken the unusual step of writing and publishing our reasons for denying the petition, we caution the parties that because we issued no order to show cause or writ of review, this opinion is final as to this court on the date it is filed (Cal. Rules of Court, rule 24(a)).