Filed 7/26/16  North Country Communications v. Vaya Telecom CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NORTH COUNTY COMMUNICATIONS CORPORATION OF CALIFORNIA, | D068170 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00083845-CU-BC-CTL) |
| VAYA TELECOM, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Law Offices of Dale Dixon and R. Dale Dixon, Jr., for Plaintiff and Appellant.

iCommLaw and Anita Taff-Rice for Defendant and Respondent.

I

INTRODUCTION

North County Communications Corporation of California (North County) appeals

from a judgment in favor of Vaya Telecom, Inc. (Vaya) on North County's complaint,

seeking payment of access charges for delivering calls carried by Vaya to North County's

customers.[1]  North County contends the trial court incorrectly determined North County

was not a bona fide telephone corporation, incorrectly determined North County had not

established damages, and exhibited bias toward North County, which deprived North

County of due process of law.  We are unpersuaded by these contentions and affirm the

judgment.

## II

## BACKGROUND

### A

North County is a competitive local exchange carrier.[2]  North County provides

inbound-only local telephone service to HFT, Inc. (HFT) and another business.  North

County, HFT, and the other business are wholly owned by Todd Lesser.

HFT provides chat line services.  Since at least November 2009, Vaya carried

telephone calls to North County, which North County delivered to HFT.  Each month,

---

[1]    North County did not include a copy of the complaint in its appellant's appendix.
The court's statement of decision indicated the complaint contained causes of actions for
breach of contract, declaratory relief, quantum meruit, breach of implied contract,
violation of Public Utilities Code section 2106, violation of Business and Professions
Code section 17200 et seq., and the common counts of open book account and account
stated.

[2]    Competitive local exchange carriers offer local telephone service in competition
with already established, or incumbent, local telephone exchange carriers as well as other
competitive local exchange carriers.  (*Gallivan v. AT&T Corp.* (2004) 124 Cal.App.4th
1377, 1383.)
        In 1997, the California Public Utilities Commission granted North County's
predecessor a certificate of public convenience and necessity to provide local telephone
service.  In 2008, the Public Utilities Commission accepted an advice letter from North
County's predecessor notifying the Commission the predecessor was transferring its
California operations to North County.

North County billed Vaya access charges for delivering the calls. North County based the minutes billed on data North County received from the company that transferred the calls from Vaya to North County for delivery (the tandem provider). North County based the rate billed on North County's tariffs on file with the Public Utilities Commission.[3]

Until 2013, Vaya did not pay any of North County's bills. In 2013, Vaya began paying a portion of the bills. Specifically, Vaya paid only for the minutes of use it could independently verify from its own call data records. In addition, Vaya paid the bills at a rate of $0.0007 per minute of use, not the much higher rate billed by North County.[4] For the bills or portions of bills Vaya did not pay, Vaya claimed North County's charges were invalid because (1) North County did not operate as a bona fide telephone corporation, but rather engaged in an arbitrage scheme known as access stimulation; (2) North County's tariff did not cover VoIP traffic; (3) North County's bills incorrectly classified all of Vaya's traffic as local and overstated the amount of Vaya's traffic North County

[3]     A tariff is "a schedule 'showing all rates, tolls, rentals, charges, and classifications … together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service.' Such a tariff, when approved by the [Public Utilities Commission], has the force of law." (*Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, 273-274; accord, *Southern California Edison Co. v. City of Victorville* (2013) 217 Cal.App.4th 218, 228; see Cal. Pub. Util. Com., General Order 96-B (Jan. 12, 2012), § 3.15, p. 4 [" 'Tariffs' refer collectively to the sheets that a utility must file, maintain, and publish as directed by the Commission, and that set forth the terms and conditions of the utility's services to its customers; 'tariffs' may also refer to the individual rates, tolls, rentals, charges, classifications, special conditions, and rules of a utility"].)

[4]     According to Vaya's trial brief, the rate of $0.0007 per minute of use is consistent with industry practice for voice over internet protocol (VoIP) calls, which is the type of traffic Vaya carries.

delivered; (4) North County's rates exceeded the rate cap for calls resulting from access stimulation; and (5) North County's tariff failed to comply with a Public Utilities Commission order to reduce rates.[5]

## B

### 1

Regarding Vaya's status as a telephone corporation, the court imposed an issue sanction before trial to remedy discovery violations. The issue sanction established North County engaged in access stimulation for 100 percent of the call traffic involved in this case.[6]

At trial, which was conducted before the court without a jury, Vaya argued the issue sanction precluded North County from proving North County was a bona fide

---

[5]      According to the Federal Communications Commission:  "Access stimulation, also referred to as 'traffic pumping,' occurs when a local carrier with high access charge rates enters into an arrangement with another company with high call volume operations, such as chat lines, adult entertainment calls, or 'free' conference calls.  The arrangement inflates or stimulates the number of calls into the local carrier's service area, and the local carrier then shares a portion of its increased access revenues with the 'free' service provider, or provides some other benefit to that company."  (<https://www.fcc.gov/general/traffic-pumping> [as of July 25, 2016].)

To curtail access stimulation, in 2011, the Federal Communications Commission ordered the phasing in of a new framework for intercarrier compensation.  (*In re Connect America Fund* (2011) 26 FCC Rcd. 17663, 17676 ¶ 33, 17934-17935 ¶ 801.)  The Federal Communications Commission abandoned a calling-party-network-pays model of intercarrier compensation and adopted a bill-and-keep model, under which carriers must recoup their costs primarily from their subscribers, not other carriers.  (*Id*. at p. 17676 ¶ 34.)

[6]      The court also imposed a monetary sanction.  We upheld the monetary sanction on appeal.  (*North County Communications Corporation v. Vaya Telecom, Inc.* (Dec. 8, 2015, D066629) [nonpub. opn.].)  North County has not appealed the issue sanction.

telephone corporation entitled to enforce its tariff. In Vaya's view, to be a telephone corporation in California, North County must receive compensation from North County's customers. (See Pub. Util. Code, § 234, subd. (a) [a telephone corporation is a "corporation or person owning, controlling, operating, or managing any telephone line for compensation within this state"].) Since access stimulators typically share revenue with their customers, North County was not actually receiving net income from its customers and, therefore, was not operating a telephone line "for compensation."

In contrast, North County presented evidence it billed HFT for telephone service and HFT paid for the telephone service. In North County's view, the billing and receipt of payment for telephone service satisfies the "for compensation" requirement, even if North County shared revenue with HFT and did not receive any net compensation from HFT.

2

Regarding North County's billings, North County called two witnesses and submitted more than 30 exhibits.[7] Lesser testified North County based its bills on data it received from the tandem provider. The tandem provider categorized all of Vaya's calls

---

[7] Although the exhibits are deemed part of the appellate record (Cal. Rules of Court, rule 8.124(b)(4)), North County did not transmit most of them to this court and has abandoned any appellate arguments dependent on exhibits not transmitted. (*Brown v. Copp* (1951) 105 Cal.App.2d 1, 9; see *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 656-657 [an appellate court will not presume an exhibit not transmitted undermines the judgment]; *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291 [same].)

as local calls.  Consequently, North County applied its local call rate to all minutes of use the tandem provider's data attributed to Vaya.

Although Vaya claimed its traffic included local toll and long distance calls, North County could not verify this claim from the tandem provider's data.  In addition, Vaya did not comply with the provision in North County's tariff requiring Vaya to submit a report to North County stating what percentage of Vaya's traffic was local toll and long distance.

Similarly, although Vaya claimed its traffic consisted exclusively of VoIP calls, North County's tariff did not include a rate for local VoIP traffic until March 2012.  Even after North County added a local VoIP traffic rate to its tariff, North County did not apply this rate to Vaya's traffic because North County could not determine from the tandem provider's data whether the traffic carried by Vaya included VoIP calls.

To prove the amount of North County's damages, Lesser used the tandem provider's data to create a spreadsheet showing what Vaya owed North County assuming all of Vaya's traffic was local.  Lesser also created another spreadsheet showing what Vaya owed North County assuming Vaya's traffic was comprised of a combination of local and other traffic in percentages extrapolated from an analysis of one month's data prepared by Vaya's expert for a deposition.[8]

Despite multiple attempts, North County's counsel was unable to establish an exception to the hearsay rule, authenticate, or otherwise lay a sufficient foundation for the

[8]    Both spreadsheets were contained in one exhibit that was admitted into evidence; however, the exhibit was not transmitted to this court.  (See fn. 7, *ante*.)

6

admission of the tandem provider's data into evidence. In addition, Lesser acknowledged more than once the data was not always accurate. In fact, Lesser twice used the phrase "garbage in, garbage out" to describe potential inaccuracies in the data. Lesser also acknowledged the invoices North County sent Vaya were incomplete and, for at least some period of time, contained an inaccurate billing rate.

Although Vaya had its own call data records, North County disputed the accuracy of the records and the records were not admitted into evidence. Moreover, Vaya's expert, whom North County called in North County's case-in-chief, testified the records were created solely for auditing purposes and were not intended to be used for billing purposes.

C

After North County rested its case-in-chief, Vaya moved for judgment under Code of Civil Procedure section 631.8. The court granted the motion and issued a statement of decision. As to North County's cause of action for violation of Business and Professions Code section 17200, the court found North County had failed to establish any unfair competition or unfair business practice by Vaya. As to North County's remaining causes of action, the court found North County had failed "to offer evidence of damages beyond asking the court to guess or speculate as to the amount of same."

As additional grounds for granting the motion, the court found North County failed to establish its breach of contract causes of action because there was no evidence of an express contract between North County and Vaya, or of conduct by Vaya amounting to an implied contract. The court further found North County's tariff did not evidence an

7

implied contract because the evidence showed North County was not a bona fide telephone corporation and, therefore, was not entitled to enforce its tariff. For the same reason, the court found the tariff did not support North County's cause of action for violation of Public Utilities Code section 2106.

As to the causes of action for quantum meruit and common counts, the court found there was no evidence of the reasonable value of North County's services to Vaya because Lesser's testimony on this point was not credible. Finally, as to North County's declaratory relief cause of action, the court found granting such relief was not necessary or proper since the court's decision resolved all disputes between the parties.

## III

## DISCUSSION

## A

## 1

" 'The purpose of Code of Civil Procedure section 631.8 is "to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact." [Citation.] Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence. [Citations.] [¶] On appeal, we view the evidence in the light most favorable to the judgment, and are bound by trial courts' findings that are supported by substantial evidence. [Citation.] But, we are not bound by a trial court's interpretation

8

of the law and independently review the application of the law to undisputed facts.' " (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487.)

2

From the limited record before us, which does not include North County's complaint (see fn. 1, *ante*), it appears all of North County's causes of action directly or indirectly required proof of damages. Indeed, North County's purpose in filing this action was to obtain payment for access charges for delivering Vaya's call traffic to HFT. North County contends the court erred in finding it had not adequately established damages because the fact of damages was not disputed and the amount of damages was reasonably calculable by multiplying Vaya's minutes of use by the applicable rate in North County's tariff. We disagree.

While the parties agree North County delivered Vaya's call traffic to HFT, the parties do not agree on whether and what rates North County could charge Vaya for this service. The parties also do not agree on the minutes of use attributable to Vaya's traffic. Bearing on these issues, the trial record apparently included copies of bills North County sent to Vaya, copies of partial payments Vaya made to North County beginning in 2013, and spreadsheets prepared by Lesser showing what North County believed Vaya owed if Vaya's traffic was local and what Vaya might owe if Vaya's traffic was a combination of local and other traffic. All of these documents and, consequently, all of North County's proof of damages, were based on data North County received from the tandem provider.

However, North County was never able to admit the tandem provider's data into evidence. In addition, Lesser acknowledged the data was not always accurate and the

testimony of Vaya's expert, whom the court found more credible than Lesser, undermined some of Lesser's interpretations of the data. Lesser also acknowledged some of North County's billings were incomplete and inaccurate. Consequently, contrary to North County's assertions, North County did not establish a basis upon which the court could reasonably approximate North County's damages. (See *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 398.)

More to the point for appeal purposes, North County has not shown there was insufficient evidence to support the court's finding North County had failed to prove damages. Given this conclusion, we need not address whether the court erred in determining North County could not establish certain causes of action because North County was not a bona fide telephone corporation entitled to enforce its tariff.

B

1

North County next contends the court deprived North County of due process of law by displaying bias toward North County throughout the trial. North County specifies two such displays. First, North County points to the following exchange during argument by North County's counsel on North County's motion in limine to exclude evidence the Federal Communications Commission's new access stimulation rules (see fn. 5, *ante*) prevented North County from collecting access charges from Vaya:

"THE COURT: So that the traffic in question is '09 to early '11?

"[COUNSEL]: Well, that would be the traffic in question. That is not, we argue, subject to the [Federal Communications Commission's] intercarrier compensation that

10

clearly states—the [Federal Communications Commission] clearly stated that it's prospective only. There's no retroactive application of those rules to previous traffic—

"THE COURT: It doesn't change my view that if you're right, *sir—he's doing a good job for you. Will you not do that? I find it very distracting.*

"[LESSER]: Yes, Sorry, your Honor.

"THE COURT: *I'm trying to listen and pay attention, but when you're handing him notes in the middle of the proceedings it's just very distracting, okay?*

"[LESSER]: Understood.

"THE COURT: He's got this.

"Now, where was I? I was about to ask you how anything you've said changes my view that if you wanted to raise this, it was a summary adjudication motion, that you either did not bring or by virtue of the fact that we're sitting here right now you did not prevail on?" (Italics added.)

According to North County, the trial judge's admonishment prevented North County from speaking with its counsel, which prevented counsel from properly putting on North County's case.

2

a

Second, North County points to remarks in the "Overview and Procedural Posture" section of the court's statement of the decision, which described the parties' contentions as follows: "[North County] contends Vaya used [North County's] 'call termination

11

services,' for which it should now pay. Vaya contends [North County] 'does not operate a telephone company;' rather, Vaya contends, [*North County*] *is an arbitrage scheme to facilitate 'free adult (often pornographic) entertainment*.' " (Italics added.)

According to North County, the trial judge is a person of religious conviction and, "[g]iven that pornography is vehemently condemned by virtually every religion, a reasonable person can infer that a person of religious conviction views in an unfavorable light a business facilitating pornographic content."

b

To support its assertion about the trial judge's faith-based bias, North County's appellant's appendix includes a declaration from its counsel indicating the trial judge stated during a Friday pretrial conference call he would review the underlying case materials on Sunday, rather than go to church. Vaya moved to strike counsel's declaration because it was not part of the record below.

Vaya's challenge to the declaration has merit. "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) "This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation." (*Ibid*.) While there are exceptions to the rule, North County has not attempted to establish any are applicable. Indeed, North County has not opposed Vaya's motion to strike, which we now grant. Nonetheless, even

12

if we were to consider the declaration, North County has failed to show the trial judge displayed constitutionally intolerable bias against North County.

## 3

"It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.' " (*Caperton v. A.T. Massey Coal Co.* (2009) 556 U.S. 868, 876 [129 S.Ct. 2252, 2259, 173 L.Ed.2d 1208].) To establish a due process violation based on judicial bias, North County must show a substantial probability of actual bias on the trial judge's part. (*People v. Peoples* (2016) 62 Cal.4th 718, 787.) The mere appearance of judicial bias is insufficient. (*Id.* at p. 788.) Based on an objective assessment of the circumstances, the probability of actual bias on the trial judge's part must be too high to be constitutionally tolerable. (*Ibid.*) "[T]he due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found." (*People v. Freeman* (2010) 47 Cal.4th 993, 1005.)

This is not the exceptional case. The court's admonishment to Lesser to cease passing notes to counsel occurred in the midst of counsel's arguments on one of North County's motions in limine. Considered in context, the admonishment was an effort by the court to eliminate conduct distracting it from giving its full attention to counsel's argument on an evidentiary matter important to North County's case. If anything, the admonishment evidences the absence, not the presence, of bias.

The court's reference in its statement of decision to the potentially pornographic nature of the call traffic at issue in this case appeared in the section of the statement of

13

decision describing the parties' contentions and is a direct quote from Vaya's trial brief. The content of the call traffic was not part of the trial evidence, was not discussed in other sections of the statement of decision, and was not a basis for any of the court's findings and decisions.

Further, during opening statements, the court and North County's counsel had the following exchange regarding North County's business:

"[COUNSEL]: … access stimulation, traffic pumping, it's not new. It is—it is a form of arbitrage. It's a form of regulatory arbitrage that allows parties to receive payments for terminating the traffic, but that's not to say that arbitrage should be viewed as a pejorative term. It's something that—

"THE COURT: This is America, after all, right? We're allowed to make money?

"[COUNSEL]: One man's arbitrage is another man's very good business plan."

This exchange demonstrates the court harbored no prejudicial concerns about North County's business, regardless of the trial judge's personal religious convictions. Accordingly, we conclude North County has failed to establish a due process violation based on the probability of actual bias on the trial judge's part.

IV

DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

14

McCONNELL, P. J.

WE CONCUR:

IRION, J.

PRAGER, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15