292 F.3d 749
 ECHOSTAR COMMUNICATIONS CORPORATION, Petitioner
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents
Comcast Corporation, et al., Intervenors
 No. 01-1032.
 United States Court of Appeals, District of Columbia Circuit.
 Argued February 5, 2002.
 Decided June 11, 2002.
 
 COPYRIGHT MATERIAL OMITTED On Petition for Review of an Order of the Federal Communications Commission
 Pantelis Michalopoulos argued the cause for petitioner. With him on the briefs were Charles G. Cole, Philip L. Malet and Rhonda M. Bolton.
 Louis E. Peraertz, Special Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were Jane E. Mago, General Counsel, and Daniel M. Armstrong, Associate General Counsel. Catherine G. O'Sullivan and Robert J. Wiggers, Attorneys, U.S. Department of Justice, entered appearances.
 David E. Mills argued the cause for intervenors. With him on the brief was David J. Wittenstein.
 Before: GINSBURG, Chief Judge, EDWARDS and SENTELLE, Circuit Judges.
 Opinion for the court filed by Chief Judge GINSBURG.
 GINSBURG, Chief Judge:
 
 
 1
 EchoStar petitions for review of an order of the Federal Communications Commission dismissing the Company's program access complaint against Comcast Corporation and two of its affiliates, and denying its motion to compel Comcast to produce certain documents. Comcast has intervened and filed a brief in support of the Commission. Because we conclude that the Commission's order is reasonable and supported by substantial evidence, we deny review.
 
 I. Background
 
 2
 EchoStar, a nationwide provider of direct broadcast satellite (DBS) television service, competes in the Philadelphia market with Comcast, which provides cable television service. Affiliates of Comcast produce "Comcast SportsNet," a cable network that features a variety of sports programming, including the games of several of Philadelphia's professional sports teams. Some of those games had previously been carried by two other cable networks, SportsChannel Philadelphia, which was distributed by satellite, and PRISM, which was, like Comcast SportsNet, delivered to cable systems terrestrially. After failing to persuade Comcast to sell it the right to carry SportsNet, EchoStar filed a program access complaint with the Commission pursuant to 47 U.S.C. § 548 and the regulations promulgated thereunder.
 
 
 3
 Section 548(b) prohibits a "satellite cable programming vendor" affiliated with a cable operator from engaging in:
 
 
 4
 unfair methods of competition or unfair or deceptive acts or practices, the purpose or effect of which is to hinder significantly or to prevent any multichannel video programing distributor [MVPD] from providing satellite cable programming....
 
 
 5
 47 U.S.C. § 548(b). Section 548(c)(2) instructs the Commission to promulgate regulations to prevent a cable operator from "unduly or improperly influencing" the sales decisions of its affiliated satellite cable programming vendor, and to prohibit an affiliated satellite cable programming vendor from discriminating in the prices, terms, and conditions of sale or delivery of satellite cable programming, which the Commission has done, see 47 C.F.R. § 76.1002.
 
 
 6
 The Cable Services Bureau denied EchoStar's complaint in its entirety. The Bureau held first that EchoStar's claims under the regulations — based upon the Comcast affiliates' refusal to sell it SportsNet, and upon Comcast's unduly influencing its affiliates — failed because SportsNet, being terrestrially distributed, is not "satellite cable programming." EchoStar Communications Corp. v. Comcast Corp., 14 F.C.C. Rcd.2089, ¶ 21 (CSB 1999) (Bureau Order). Next the Bureau — assuming, as EchoStar had argued in its complaint, that the Commission could prohibit an attempt to evade the regulations — concluded that Comcast had not switched SportsNet from satellite to terrestrial delivery with a purpose of evasion. Id. ¶ 27. The Bureau made two findings on its way to that conclusion: (1) SportsNet is a "new service," not "simply a service moved from satellite to terrestrial distribution"; and (2) Comcast "employed terrestrial distribution for legitimate business means" [sic], namely, because terrestrial distribution of SportsNet is "dramatically less expensive" than satellite distribution would be. Id. ¶¶ 23-24, 26. Having found no evasion, the Bureau held that Comcast had not engaged in any unfair method of competition or unfair practice under § 548(b). Id. ¶ 28. Finally, the Bureau denied as unnecessary EchoStar's Motion to Compel Production of Documents by Comcast. Id. ¶¶ 30-31.
 
 
 7
 EchoStar then applied to the Commission for review, which was denied. See In the Matter of DIRECTV, Inc. and EchoStar Communications Corp. v. Comcast Corp., 15 F.C.C. Rcd. 22802, ¶ 2 (2000) (Commission Order). With respect to Comcast's alleged evasion, the Commission
 
 
 8
 acknowledge[d] that there may be some circumstances where moving programming from satellite to terrestrial delivery could be cognizable under [47 U.S.C. § 548(b)] as an unfair method of competition or deceptive practice if it precluded competitive MVPDs from providing satellite cable programming.
 
 
 9
 Id. ¶ 13. The Commission nonetheless dismissed EchoStar's § 548(b) claim based upon the Bureau's factual findings that SportsNet is a new service and that terrestrial delivery has cost advantages for Comcast. Id. ¶¶ 13-14. The Commission did not discuss the Bureau's denial of EchoStar's motion to compel the production of documents.
 
 II. Analysis
 
 10
 On review in this court EchoStar challenges the Commission's holding that Comcast did not violate § 548(b) by moving programming from satellite to terrestrial delivery in order to evade the program access requirements of § 548(c), and the denial of its motion for discovery. We review the decision of the Commission under the Administrative Procedure Act, 5 U.S.C. § 706, to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." We will uphold the decision if the Commission made factual findings supported by substantial evidence, considered the relevant factors, and "articulate[d] a rational connection between the facts found and the choice made." Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors, 745 F.2d 677, 683-86 (D.C.Cir.1984) (arbitrary and capricious standard incorporates substantial evidence test).
 
 A. Dismissal of the Complaint
 
 11
 EchoStar raises three challenges to the Commission's order dismissing its complaint: The Commission's decision is not supported by substantial evidence; the Commission disregarded certain evidence of evasion; and the Commission failed adequately to explain its decision.
 
 1. Substantial evidence
 
 12
 With regard to the substantiality of the evidence underlying the Commission's decision, EchoStar does not dispute that the affidavit of Sam Schroeder, an executive of the Comcast affiliate that owns SportsNet, supports the Commission's finding that terrestrial delivery costs Comcast significantly less money than would satellite delivery. Instead, EchoStar claims that Schroeder's declaration is not substantial evidence because it is "unsupported and untested" and hearsay, for which proposition it relies principally upon Consolidated Edison Co. v. NLRB, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126 (1938).
 
 
 13
 The Commission inexplicably fails to address these arguments in its brief, but Comcast comes to the Commission's rescue. First, Comcast argues that the Commission could rely upon Schroeder's affidavit because it was given under oath, the affiant had personal knowledge of the facts he recounts, EchoStar does not challenge his cost estimates, and there is no requirement that an affidavit be corroborated. Second, Comcast argues that it is well-settled not only that hearsay can be considered by an administrative agency but that it can constitute substantial evidence. See Richardson v. Perales, 402 U.S. 389, 407, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Crawford v. United States Dep't of Agric., 50 F.3d 46, 49 (D.C.Cir.1995).
 
 
 14
 We have to agree with Comcast. There is no support for EchoStar's claims that uncorroborated and untested testimony and hearsay testimony cannot constitute substantial evidence. Although the Court in Consolidated Edison did say in dicta that "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence," 305 U.S. at 230, 59 S.Ct. 206, the Court has long since made clear that this statement was "not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value," Richardson, 402 U.S. at 407, 91 S.Ct. 1420; hence in that case the Court concluded that unsworn doctors' examination reports, contradicted by direct medical testimony, constituted substantial evidence upon which an agency could deny disability insurance benefits under the Social Security Act. Id. at 402, 91 S.Ct. 1420. Moreover, we have held specifically that a complaint proceeding brought under the Communications Act may be resolved solely upon affidavits submitted by the parties, without allowing discovery, see American Message Ctr. v. FCC, 50 F.3d 35, 41 (D.C.Cir.1995); administrative agencies may consider hearsay evidence as long as it "bear[s] satisfactory indicia of reliability," Crawford, 50 F.3d at 49; and hearsay can constitute substantial evidence if it is reliable and trustworthy, id.
 
 
 15
 The propriety of the Commission's reliance upon Schroeder's affidavit is particularly clear. First, the affidavit, although technically hearsay, that is, an out of court statement offered for the truth of the matter asserted, was made under oath. Second, the facts contained therein were undisputed. EchoStar submitted no contradictory evidence — indeed, no evidence whatsoever except two magazine articles. See Mot. to Compel at 5-6. If the Commission could not rely upon the uncontested, sworn affidavit of a witness speaking from personal knowledge, then one would be hard-pressed to understand why a district court may, upon the basis of a sworn declaration, grant summary judgment under Federal Rule of Civil Procedure 56.
 
 
 16
 2. "Evidence" the Commission did not address
 
 
 17
 EchoStar argues the Commission ignored evidence that Comcast intended to evade the requirements of § 548(c). In this regard, EchoStar claims to have "proffered" the following evidence: (1) an admission by an unnamed Comcast representative made at a July 23, 1998 meeting with the Commission; and (2) a statement by Comcast President Brian Roberts, as reported in Vanity Fair magazine. Relying principally upon Green v. Shalala, 51 F.3d 96 (7th Cir.1995), EchoStar argues that "[a]n agency determination that fails to grapple with significant record evidence is not supported by substantial evidence, and is moreover, arbitrary and capricious."
 
 
 18
 The Commission argues that it was under no obligation to address the Vanity Fair article in its order because "[t]here is nothing in Mr. Robert's [sic] alleged quotes [sic] to suggest that Comcast did anything unfair or to cast doubt on the claim of significant cost advantages from terrestrial delivery." Comcast agrees with that assessment and goes on to point out that there is no record evidence of an admission made at a July 23, 1998 meeting.
 
 
 19
 Applying the standard that EchoStar suggests, we cannot fault the Commission for having ignored any "significant record evidence." First, EchoStar points to no record evidence of a July 23, 1998 meeting, much less an admission at such a meeting. In its brief EchoStar refers to "evidence that Comcast's refusal to deal with EchoStar was a `purposeful decision related to competition.'" It cites not to record evidence, however, but to an allegation made by its counsel in the Motion to Compel he submitted to the Bureau, which motion conspicuously lacks any citation to evidence. Thus, even if the statement is relevant — which is doubtful inasmuch as it relates to Comcast's refusal to sell to EchoStar and not to Comcast's decision to use terrestrial delivery — the Commission could properly ignore the unsupported assertion that the statement was made.
 
 
 20
 Second, the statement attributed to Roberts in Vanity Fair lacks any probative value. Consider:
 
 
 21
 The question now is whether Roberts can capitalize on an apparent loophole in the 1996 Telecommunications Act in order to lock up the Philly area's sports programming. "We don't like to use the words `corner the market,' because the government watches our behavior," Roberts says with a laugh. "Let's just say we've been able to do things before they're in vogue."
 
 
 22
 The New Establishment: Brian Roberts, VANITY FAIR, Oct. 1997, at 166. Even if we assume the accuracy of the quotation, it says nothing about whether Comcast moved from satellite to terrestrial delivery in order to evade the program access requirements of § 548(c). At most, Roberts concedes that Comcast is taking advantage of SportsNet's not being covered by § 548(c) because it is delivered terrestrially.
 
 
 23
 In its reply brief EchoStar argues for the first time before this court that the Commission's finding that Comcast did not intend to evade the requirements of § 548(c) is not supported by substantial evidence because the Commission failed adequately to address (1) a letter from Comcast in which it stated that SportsNet would not be distributed "on any satellite delivered service in the Philadelphia market"; (2) Schroeder's statement that Comcast refused to sell SportsNet to EchoStar in order to enhance its value to other purchasers; and (3) EchoStar's offer to "cover a share of the uplink costs" of delivering SportsNet via satellite. In the "Statement of Facts" in its opening brief EchoStar noted that it had presented the evidence to the Bureau, but it nowhere in that brief faulted the Commission for failing adequately to address this evidence. Because the arguments to that effect were raised for the first time in EchoStar's reply brief, they are not properly before the court. McBride v. Merrell Dow Pharm., Inc., 800 F.2d 1208, 1210-11 (D.C.Cir. 1986).
 
 3. Failure to explain
 
 24
 EchoStar contends that the Commission's decision should be set aside as arbitrary and capricious because the Commission failed in two respects to "articulate its reasons in a clear and understandable manner." First, the Commission stated, "we agree with the Bureau that the facts alleged are not sufficient to constitute" a violation of § 548(b), even though it is clear that the Commission's decision relied upon facts found by the Bureau. See Commission Order at ¶¶ 13-14. Second, EchoStar questions the weight the Commission placed upon the Bureau's finding that SportsNet "was not a service that was moved from satellite to terrestrial distribution, but was in fact a new service." Id. ¶ 14. EchoStar argues that it ought to be irrelevant whether programming "is moved to terrestrial delivery" with an intent to evade access requirements or whether "terrestrial delivery is used from the outset" with that intent. EchoStar also notes that some of the content on SportsNet "had previously been distributed to cable systems by satellite."
 
 
 25
 In response, the Commission confirms that its determination that Comcast did not engage in unfair methods of competition or unfair or deceptive acts or practices involved a "factual inquiry." The Commission gives no explanation, however, for the statement in its order that the "facts alleged" are insufficient to state a claim. With respect to EchoStar's second argument, the Commission fails to explain why choosing terrestrial delivery from the outset with an intent to evade would not give rise to a violation of § 548(b). Comcast does not respond at all to EchoStar's arguments.
 
 
 26
 Although EchoStar is correct that the Commission said it was evaluating the § 548(b) claim based upon the "facts alleged" when clearly it relied upon the findings made by the Bureau, the misstatement is immaterial. Both the Commission's reasoning and its actual holding "may reasonably be discerned." See Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). As for EchoStar's argument that the Commission inadequately explained its reliance upon the Bureau's finding that SportsNet is a new service, the Commission's conclusion that Comcast chose terrestrial delivery for a valid business reason necessarily precluded holding that Comcast acted to evade the requirements of § 548(c), regardless whether it switched an existing service to terrestrial delivery (as EchoStar alleged) or chose terrestrial delivery from the outset of a new service (as the Commission found). Making the obvious express would have done no harm, but neither did leaving it implicit.
 
 B. Discovery
 
 27
 EchoStar's Motion to Compel Production of Documents was long on reasons the evidence before the Bureau was already sufficient, and short on reasons discovery was necessary, but the essence of its rationale for discovery was the observation that: "[C]orroborative evidence about the unfairness of Comcast's conduct, as well as Comcast's motives ... must necessarily lie in the exclusive custody of Comcast." To the extent the Bureau was responsive to EchoStar's contention, its explanation was terse: "EchoStar has not persuaded us that discovery is necessary or that the record compiled herein is insufficient." Bureau Order ¶ 31. Thus, the Commission's sub silentio denial of EchoStar's Motion to Compel must stand or fall upon the Bureau's statement that the record was already sufficient to decide the case.
 
 
 28
 Without specifically attacking anything actually said in the Bureau's order, EchoStar argues that the Agency's decision to deny it discovery was arbitrary and capricious, denied it due process of law, and violated EchoStar's right under § 556(d) of the APA to submit rebuttal evidence. EchoStar does not appear to challenge the Commission's general rule that discovery is available in program access cases only "on a case-by-case basis as deemed necessary by the Commission staff reviewing the complaint." In the Matter of Implementation of Sections 12 and 19 of the Cable Television Consumer Protection and Competition Act of 1992, First Report & Order, 8 F.C.C. Rcd. 3359, ¶ 75 (1993). Rather, EchoStar seems to contend that denying it discovery in this case was fundamentally unfair because "the Commission decided the unfair practices claim based solely on Comcast's own assertions about its motives" and "[t]he only way for EchoStar to meet its burden of proof regarding these motives was for the FCC to allow discovery."
 
 
 29
 In response, the Commission invokes its general rule and faults EchoStar's Motion to Compel upon a number of grounds not even arguably relied upon by the Bureau. The Commission also argues, however, that EchoStar failed to meet its burden of showing why discovery into Comcast's motive for distributing SportsNet terrestrially was necessary in light of the evidence before the Bureau that SportsNet was a new service and that terrestrial delivery was less expensive than satellite delivery, and EchoStar's failure to submit contradictory evidence. Comcast adds the observation that agency decisions regarding discovery are entitled to "extreme deference." Hi-Tech Furnace Sys., Inc. v. FCC, 224 F.3d 781, 789 (D.C.Cir.2000).
 
 
 30
 Under a less deferential standard of review the cryptic nature of the Bureau's decision might make this a close case. According the Agency "extreme deference," however, its "path may reasonably be discerned." Bowman Transp., 419 U.S. at 286, 95 S.Ct. 438.
 
 
 31
 Although requiring a party to present evidence indicating that discovery is necessary might in some circumstances place that party in a difficult situation, that is not a concern in the circumstances of this case. EchoStar was free to put forward evidence about distribution services rebutting, if it could, Schroeder's assertions about the cost of terrestrial versus satellite delivery; and it could surely have submitted an affidavit supporting its claim to have offered to pay for the uplink and to have witnessed the statement allegedly made by Comcast at a July 23 meeting.
 
 
 32
 In support of its suggestion that the denial of discovery in this case violated its right to due process, EchoStar cites only McClelland v. Andrus, 606 F.2d 1278 (D.C.Cir.1979). On the facts of that case we held that the agency's refusal to allow discovery of a particular document "could" violate due process. Id. at 1286. Unlike EchoStar, McClelland was faced with a severe deprivation at the hands of the Government, namely, termination of his employment. Also unlike EchoStar, McClelland was seeking a specific document "uniquely relevant to [his] case." Id. Nothing about the present case suggests that EchoStar has a constitutional right to discovery.
 
 
 33
 Finally, EchoStar claims in a sentence that the Agency's decision is contrary to § 556(d) of the APA, which provides that "[a] party is entitled to ... submit rebuttal evidence." 5 U.S.C. § 556(d). Neither logic nor authority supports EchoStar's claim that the statute imposes upon an agency the obligation to order discovery upon demand so that a party may seek rebuttal evidence to submit. Nor are we at liberty so to embroider the procedures of the APA. See Vermont Yankee Nuclear Power Co. v. NRDC, 435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).
 
 III. Conclusion
 
 34
 Because the decision of the Commission is reasonable and is supported by substantial evidence, EchoStar's petition for review is
 
 
 35
 
 Denied.