Filed 2/5/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**THE UTILITY REFORM NETWORK,**

      **Petitioner,**

**PUBLIC UTILITIES COMMISSION,**

      **Respondent;**

**PACIFIC GAS AND ELECTRIC COMPANY et al.,**

      **Real Parties in Interest.**

_____

**INDEPENDENT ENERGY PRODUCERS ASSOCIATION et al.,**

      **Petitioners,**

**PUBLIC UTILITIES COMMISSION,**

      **Respondent;**

**PACIFIC GAS AND ELECTRIC COMPANY et al.,**

      **Real Parties in Interest.**

_____/

A138701

(Cal. P.U.C. Dec.
No. 12-12-035)

A139020

(Cal. P.U.C. Dec.
No. 13-04-032)

In 2012, Pacific Gas and Electric Company (PG&E) filed an application with the California Public Utilities Commission (the Commission) seeking approval of an

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part V.

1

agreement by which PG&E would acquire a new gas-fired power plant in Oakley California (the Oakley Project). A principal issue in the application proceedings was whether there was a need for the Oakley Project. The need was said to arise in part from California's efforts to obtain a greater percentage of its energy from renewable sources, thus requiring additional conventional electrical generating capacity to cope with fluctuations in supply due to the intermittent nature of wind and solar power.

As evidence of this claimed need, PG&E presented a declaration from an executive of the California Independent System Operator (the CAISO) and a petition the CAISO had filed with a federal agency. Neither the CAISO executive nor the authors of the petition testified in the Commission's proceedings. Because of their hearsay nature, the administrative law judge (ALJ) presiding over the application case ruled these materials could not be used as evidence of the need for the Oakley Project. She later issued a proposed decision recommending denial of PG&E's application.

The Commission did not adopt the ALJ's decision, and its decision approving PG&E's application expressly relied on these hearsay materials in finding the Oakley Project is needed. The Utility Reform Network (TURN), Western Power Trading Forum (WPTF), and Independent Energy Producers Association (IEP), which had participated in the application proceedings, sought rehearing before the Commission. Among other arguments, they claimed the Commission had violated their substantial rights by relying on hearsay evidence the ALJ had ruled could not be used as proof of need for the Oakley Project and that the Commission's decision was unsupported by substantial evidence. After the Commission denied their applications for rehearing, they filed petitions for writs of review under Public Utilities Code section 1756, subdivision (a).[1]

In the published portion of our opinion, we conclude the Commission's finding of need is unsupported by substantial evidence, because it relies on uncorroborated hearsay materials the truth of which is disputed and which do not come within any exception to the hearsay rule. Under established California law, such uncorroborated hearsay

---

[1] All further undesignated statutory references are to the Public Utilities Code.

evidence does not constitute substantial evidence to support an administrative agency's finding of fact. Because the remaining evidence in the record fails to support the Commission's finding of need, the decisions must be annulled.

FACTUAL AND PROCEDURAL BACKGROUND

The Oakley Project approval process has been the subject of at least three Commission proceedings extending over several years. We will explain those proceedings in summary fashion and limit our factual statement to matters relevant to the issues presented in the petitions before us.

*The Initial Application for the Oakley Project*

Under the Commission's biennial procurement review process, investor-owned electric utilities (IOUs) such as PG&E must submit long-term procurement plans (LTPPs) that serve as the basis for utility procurement activities. (See § 454.5, subd. (a); *Order Instituting Rulemaking to Establish Policies and Cost Recovery Mechanisms for Generation Procurement and Renewable Resource Development* (Cal. P.U.C., Jan 22, 2004) Dec. No. 04-01-050 [2004 Cal. PUC LEXIS 28 at pp. *11-12].) In a 2007 decision, the Commission approved PG&E's 2006 LTPP, and among other things, directed PG&E to issue a request for offers (RFO) "to obtain contracts for 800 to 1,200 MW [megawatts] of new operationally flexible and dispatchable capacity by 2015."

PG&E issued the RFO in 2008. It later submitted an application to the Commission for approval of a proposed purchase and sale agreement (PSA) for the Oakley plant. In 2010, the Commission issued a decision denying approval for the Oakley Project. (*Decision on Pacific Gas and Electric Company's 2008 Long-Term Request for Offer Results and Adopting Cost Recovery Ratemaking Mechanisms* (Cal. P.U.C., July 29, 2010) Dec. No. 10-07-045 [2010 Cal. PUC LEXIS 289 at p. *1] (hereafter D. 10-07-045).) In that decision, the Commission chose to "deny the Oakley Project at this time" and made a factual finding that the project was not needed. (*Id.* at pp. *60, 79.) Nevertheless, the Commission believed Oakley had "numerous beneficial attributes," so it allowed PG&E to resubmit the application subject to various conditions. (*Id.* at p. *60.) Among other conditions, the Commission stated PG&E could resubmit

3

the application "[i]f the final results from the CAISO Renewable Integration Study demonstrate[] that, even with the projects approved by the Commission, there are significant negative reliability risks from integrating a 33% Renewable Portfolio Standard."[2]  (*Id.* at p. *61.)

*The Commission's Approval of the Oakley Project Is Annulled*

PG&E modified the Oakley PSA to address D. 10-07-045, and then submitted a petition for modification of that decision.  Acting sua sponte, the Commission treated the petition for modification as an application for approval of the project.  (*Decision Authorizing Pacific Gas and Electric Company to Enter Into a Purchase and Sale Agreement with Contra Costa Generating Station LLC* (Cal. P.U.C., Dec. 16, 2010) Dec. No. 10-12-050 [2010 Cal. PUC LEXIS 457, at p. *2] (hereafter D. 10-12-050).)  A number of parties, including TURN and WPTF, filed comments opposing PG&E's petition for modification, arguing that a new application, not a petition for modification, was the correct procedural vehicle for bringing the Oakley Project back for Commission consideration.  (*Id.* at p. *7.)  Although the Commission agreed with this procedural objection, it went on to consider PG&E's filing as an application.  (*Id.* at pp. *11-12.)  It concluded that the benefits of the amended Oakley Project justified approval of the amended PSA.  (*Id.* at pp. *19-20, 23.)  After the Commission denied various parties' applications for rehearing, TURN sought writ review of D. 10-12-050 and the Commission's decision denying rehearing, D. 11-05-049.

In *The Utility Reform Network v. Public Utilities Commission* (Mar. 16, 2012, A132439) [nonpub. opn.] (*TURN I*), we annulled D. 10-12-050 and D. 11-05-049.[3]  We

---

[2] The Renewable Portfolio Standard (RPS) is part of California's effort to attain a target of generating 33 percent of its total retail sales of electricity from renewable energy resources by the end of 2020.  (§§ 399.11, subd. (a), 399.12, subd. (i).)

[3] Citation of our prior, unpublished opinion does not violate California Rules of Court, rule 8.1115(a) because "[w]e . . . cite the decision to explain the factual background of the case and not as legal authority." (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

4

held the Commission could not treat PG&E's petition for modification as a new application because the Commission had failed to follow its own rules of practice and procedure. (*TURN I,* at pp. 11-21.) We concluded the Commission's failure to proceed in the manner required by law had prejudiced the parties to the proceeding, and we therefore set aside the Commission's decisions. (*Id*. at pp. 1-2, 20-21, 24-26.)

*Proceedings on PG&E's Renewed Application*

Shortly after issuance of our decision in *TURN I,* PG&E filed with the Commission a new application for approval of the amended Oakley PSA. On May 21, 2012, PG&E submitted prepared testimony in support of its application. The testimony addressed the need for and benefits of the Oakley Project, and it referred to a petition the CAISO had filed with the Federal Energy Regulatory Commission (FERC) seeking a waiver to prevent the retirement of the Sutter Energy Center (the Sutter Waiver Petition). PG&E asserted that the CAISO had supported the Sutter Waiver Petition with testimony describing CAISO studies that had "identified a need for new flexible generation capacity resources in 2017-2018 in order to integrate intermittent renewable resources."[4] PG&E relied in particular upon the declaration of CAISO Executive Director of Market Analysis and Development, Mark Rothleder (the Rothleder Declaration). In his declaration, Rothleder stated that using certain assumptions, the CAISO's analysis had concluded "there will be a shortage or gap of 3,570 MW for meeting system-wide capacity needs in California by the end of 2017. This shortage would pose significant challenges to the reliable operation of the [CAISO] grid." According to Rothleder, CAISO was concerned about the problem caused by integration of renewable energy resources, "especially given the retirement of thousands of MWs of once-through cooling (OTC) units."

On May 25, 2012, the commissioner assigned to PG&E's application, Michael R. Peevey, issued his "Scoping Memo and Ruling" for the proceedings (the Scoping Memo).

---

[4] Renewable energy resources, such as wind and solar power, are "intermittent" because they fluctuate naturally. To cite an obvious example, the availability of solar power is affected by the rising and setting of the sun and by cloud cover.

(See § 1701.1, subd. (b).)  Among the issues identified in the Scoping Memo was the need for the Oakley Project.  The Scoping Memo asked:  "Is the Oakley PSA barred or authorized pursuant to D. 07-12-052, which requires all UOG [utility-owned generation] to be selected through a competitive process unless it is needed to meet a specific, unique reliability issue?  *This issue includes consideration of whether the Oakley project will meet a specific, unique reliability issue.*"  (Italics added; fn. omitted.)  A separate issue laid out in the Scoping Memo was whether the CAISO had "issued its final report on its renewable resource integration study demonstrating significant negative reliability risks from integrating a 33% [RPS.]"  (Fn. omitted.)  The Scoping Memo stated that the first issue—the need for the Oakley Project—was one of fact and was contested by the parties.  Commissioner Peevey therefore determined evidence was required and scheduled evidentiary hearings.

In addition to its prepared testimony, PG&E asked the Commission to take official notice of decisions of the California Energy Commission (CEC) and the Bay Area Air Quality Management District (the District) regarding each agency's review of elements of the Oakley Project.  After submission of PG&E's prepared testimony, the parties conducted discovery and responded with their own prepared testimony.  PG&E, in turn, submitted rebuttal testimony that included a copy of the entire Sutter Waiver Petition.

On August 14, 2012, the Commission's Division of Ratepayer Advocates (DRA) filed a motion to strike portions of PG&E's prepared and rebuttal testimony on the grounds that the identified portions consisted of "hearsay or double hearsay statements by representatives of the . . . CAISO, which have been submitted to prove the truth of the matter asserted therein:  namely, that new system resources are needed to support system-wide operational flexibility needs beginning in 2017-2018."  The documents subject to DRA's motion to strike included both the Rothleder Declaration and the Sutter Waiver Petition.

*Evidentiary Rulings*

On the first day of the evidentiary hearings, the presiding ALJ granted PG&E's motion for official notice of the documents from the CEC and the District, but only "for

6

the limited purpose of supporting the testimony that's already been given[.]"  With respect to the Rothleder Declaration and the Sutter Waiver Petition, the ALJ granted DRA's motion to strike in part, stating, "Regarding all the other attachments which refer to the . . . CAISO . . . , at issue in this case is whether the [CAISO] has issued a final determination, a final report, a final result, . . . and PG&E may offer evidence toward this issue.  [¶] And these documents . . . on the issue of whether these very documents alone or in total satisfy the requirement, that requirement of D10-07-045, this evidence goes to that and is not – for that purpose it's appropriate.  [¶]  I will not allow . . . this evidence . . . to be used for the purpose of proving on this record the truth of the matter asserted; that is, for proving that there is a system reliability need or . . . for the purpose of proving that what [the CAISO] says is true, or that the Commission should find on the basis of what the [CAISO] says that . . . what the [CAISO] says is true.  [¶] The [CAISO's] statements are not binding on the Commission, and in that way they are not judicially noticeable authority.  And they are subject to dispute.  They are being challenged before the [Commission].  [¶] And so again, I will not strike the attachments, but I will strike the testimony that does cite to those attachments for purposes of the truth."

During the course of the evidentiary hearings, the ALJ explained she would allow consideration of the CAISO materials for the purpose of showing whether the CAISO had reached a final determination on the issue of significant negative reliability risks, but not for the purpose of showing that the Oakley Project would meet a specific, unique reliability issue, i.e., whether there was a need for the Oakley Project.  At one point, when DRA's counsel told the ALJ that her proposed cross-examination was seeking information about PG&E's claim that there was a residual need for flexible energy resources that could only be met by the Oakley Project, the ALJ stated, "I don't want this. I don't want hearsay evidence used for that issue, . . . because we can't litigate that because we don't have the [CAISO] here.  [¶] [T]hat's why I struck a lot of testimony from PG&E because it was using the third party statements for the truth of the matter

asserted. [¶] We cannot use the third party documentation for that. The third party documentation is for whether there's a final [CAISO] report."[5]

*The Proposed Decisions*

After briefing from the parties, the ALJ filed a proposed decision recommending denial of PG&E's application. She found there was insufficient evidence of a specific, unique reliability need for the Oakley Project. The ALJ rejected PG&E's reliance on various CAISO statements, including the Sutter Waiver Petition. She concluded PG&E's use of the evidence violated her rulings and noted that because the CAISO was not a party to the proceedings, "there ha[d] been no opportunity to probe its out-of-record statements in the context of the specific issues presented here."

The ALJ's proposed decision also relied on the fact that both the CAISO and PG&E were parties to a settlement in a separate Commission proceeding in which they had stipulated that "'[t]he resource planning analyses presented . . . do not conclusively demonstrate whether or not there is need to add capacity for renewable integration purposes through the year 2020, the period to be addressed during the current LTPP cycle[.]'" In its decision approving the settlement in that proceeding, the Commission explained the parties had agreed to defer determination of the utilities' future need for additional generation. (*Decision on System Track I and Rules Track III of the Long-Term Procurement Plan Proceeding and Approving Settlement* (Cal. P.U.C., April 19, 2012) Dec. No. 12-04-046 [2012 Cal. PUC LEXIS 192, at p. *8] (*Decision Approving Settlement*).)[6] The Commission quoted the parties' settlement agreement, which expressed the settling parties' "'general agreement that further analysis is needed before any renewable integration resource need determination is made.'" (*Ibid.*) In determining

---

[5] Despite the obvious importance of the CAISO's findings to the issues litigated in this proceeding, the CAISO elected not to become a party. It appears PG&E may have asked the CAISO to submit testimony, but the CAISO declined to do so.

[6] On July 8, 2013, PG&E filed a request that we take judicial notice of several Commission decisions, as well as a document from the Commission's records and an ALJ decision. We grant the request with respect to exhibits A through S, which are copies of Commission decisions. (Evid. Code, § 452, subd. (c).) We deny as moot the request as to exhibits T and U.

the reasonableness of the settlement, the Commission looked at the whole record and found "clear evidence . . . that additional generation is not needed by 2020, so there is record support for deferral of procurement." (*Id*. at p. *11.)

Assigned Commissioner Peevey issued a proposed alternate decision recommending approval of the Oakley PSA. The proposed alternate decision relied on the Sutter Waiver Petition and statements from CAISO's chief executive officer as evidence that "retirement of OTC plants and integration of the 33% RPS by 2020 creates the potential for a significant reliability risk."

### *The Commission's Decision*

In Decision No. 12-12-035 (the *Oakley Decision*), the full Commission adopted the proposed alternate decision and approved the amended Oakley PSA. The Commission referred to the ALJ's ruling allowing the CAISO materials into the record only for limited purposes but noted that hearsay evidence is admissible in Commission proceedings. (*Oakley Decision,* p. 18.) It therefore chose to accord the CAISO studies and statements PG&E had introduced "less weight than we would for a CAISO study that was subject to cross examination in a Commission proceeding." (*Id*. at pp. 18-19.) The Commission did not accept as true the CAISO's conclusion that there would be a shortfall of 3,750 MW by 2018, but following the alternate decision, it concluded the CAISO's findings were persuasive evidence demonstrating significant negative reliability risks from integrating a 33% RPS. (*Id*. at pp. 19, 37.)

### *The Rehearing Decision*

IEP sought rehearing of the *Oakley Decision,* as did TURN and WPTF. In their applications, the parties contended the Commission had improperly relied on hearsay evidence for its finding of significant reliability risk. The applicants also argued the Commission had failed to preserve the substantial rights of the parties and had not proceeded in the manner required by law when it relied on hearsay evidence despite the ALJ's ruling precluding use of the CAISO materials as evidence of need. (See Cal. Code Regs., tit. 20, § 13.6(a) (Rule 13.6(a)) ["Although technical rules of evidence ordinarily need not be applied in hearings before the Commission, substantial rights of the parties

9

shall be preserved."].)  Furthermore, the applicants claimed the Commission's decision was not supported by substantial evidence.

In Decision No. 13-04-032 (the *Rehearing Decision*), the Commission addressed the parties' applications.  It explained that in the *Oakley Decision,* it had intended to overrule the ALJ's evidentiary ruling and could thus rely on the Rothleder Declaration and the Sutter Waiver Petition to demonstrate the need for the Oakley Project.  (*Rehearing Decision,* p. 5.)  Because it had not expressly overruled the ALJ, however, the Commission acknowledged it had "generated some confusion."  (*Ibid.*)  The Commission explained it had "reviewed the ALJ's ruling, and decided not to follow it."  (*Id.* at p. 6.)  It therefore modified its earlier decision to make it expressly clear it was overruling the ALJ's ruling regarding the use of the Rothleder Declaration and the Sutter Waiver Petition.  (*Id.* at pp. 22-23.)  It further ruled that the substantial rights of the parties had been preserved, because the parties had been given the opportunity to challenge the substance of the Rothleder Declaration and the Sutter Waiver Petition through their own testimony and through data requests to PG&E.  (*Id.* at pp. 7-8.)

The Commission also reasoned that its rules of practice and procedure permitted it to rely on hearsay evidence for the truth of the matter asserted.  (*Rehearing Decision,* p. 6.)  Under Rule 13.6(a), "'the Commission allows admissions of hearsay although it is given less weight than other evidence.  In general, hearsay in administrative proceedings is admissible if a responsible person would rely upon it in the conduct of serious affairs, regardless of its possible inadmissibility in civil actions.'"  (*Rehearing Decision,* at p. 6.)  Moreover, the Commission asserted, hearsay evidence is accepted in Commission proceedings when supported by other evidence, and administrative agencies are permitted to rely upon it.  (*Id.* at p. 7.)  Since the Rothleder Declaration and Sutter Waiver Petition had been submitted to FERC under penalty of perjury, the Commission found the Sutter Waiver Petition was "an analysis upon which [it] could reasonably rely in conducting [its] affairs."  (*Ibid.*)  In addition to the Sutter Waiver Petition, the Commission cited statements from reports issued by the CEC and the District on the Oakley Project as the

10

basis for its finding of a "significant negative reliability risk from integrating a 33% [RPS] by 2020[.]" (*Id*. at p. 14.)

After considering and rejecting all of the parties' other arguments, the Commission denied the applications for rehearing. (*Rehearing Decision,* at pp. 22-23.)

*The Petitions for Review*

On May 20, 2013, TURN filed a petition for writ of review of the Commission's decisions in this court. (§ 1756, subd. (a).) That same day, IEP and WPTF filed a combined petition for writ of review in the Court of Appeal for the Third Appellate District. On June 18, 2013, the Supreme Court ordered the latter proceeding transferred to this court. We consolidated the petitions on our own motion.

DISCUSSION

Petitioners raise a number of challenges to the Commission's decisions. They devote the greater part of their briefing to their claim that the Commission failed to preserve the substantial rights of the parties because it relied on the Rothleder Declaration and the Sutter Waiver Petition to support the finding of need for Oakley Project despite the ALJ's ruling that this evidence could not be used for that purpose. (See Rule 13.6(a).) They argue this prejudiced them because they were unable to challenge the claims made in these materials through cross-examination. In addition, they assert that if they had known the Commission would rely on these materials for the purpose of demonstrating the need for the Oakley Project, they would have presented their own evidence on that issue during the hearings.

As we explain, we conclude we need not resolve petitioners' procedural challenges. Even if we assume the Commission's procedures sufficiently preserved the substantial rights of the parties, we do not find substantial evidence to support its finding that the Oakley Project is needed to meet a specific, unique reliability risk. Before addressing the issue of substantial evidence, we explain why writ review is appropriate and outline the scope of our review of the Commission's decisions.

11

I. *Propriety of Writ Review*

Any party aggrieved by an order or decision of the Commission may petition for a writ of review from the Court of Appeal or the Supreme Court. (§ 1756, subd. (a).) "Where, as here, 'writ review is the exclusive means of appellate review of a final order or judgment, an appellate court may not deny an apparently meritorious writ petition, timely presented in a formally and procedurally sufficient manner, merely because, for example, the petition presents no important issue of law or because the court considers the case less worthy of its attention than other matters.' [Citation.] We are not, however, 'compelled to issue the writ if the [Commission] did not err . . . .' (*Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, 282, fn. omitted.)" (*PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1193.) We need not issue the writ "if the petitioning party fails to present a convincing argument for annulment of the [Commission's] decision." (*Pacific Bell v. Public Utilities Com., supra,* 79 Cal.App.4th at p. 272.)

In accordance with this standard, after considering the briefing and exhibits submitted by the parties, we concluded the petitions appeared meritorious. We therefore granted the writ petitions and gave notice of our intent to decide the matter on the record provided, unless a party promptly filed an objection or a request for oral argument. Having received no such objection or request, we deem the matter submitted.

II. *Standard of Review*

Section 1757 delimits the scope of our review of Commission decisions. (§ 1757, subd. (a).) In this case, the petitioners' challenges require us to determine whether: (1) the Commission has proceeded in the manner required by law and (2) the findings in its decision are supported by substantial evidence in light of the whole record. (§ 1757, subd. (a)(2), (4).)

In assessing whether the Commission proceeded in the manner required by law (§ 1757, subd. (a)(2)), "we are mindful that '[t]here is a strong presumption of validity of the [C]ommission's decisions . . . .' [Citation.]" (*Utility Consumers' Action Network v. Public Utilities Com.* (2010) 187 Cal.App.4th 688, 697.) The Commission's

interpretation of its own rules and regulations "is entitled to consideration and respect by the courts." (*Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1096.) We will not interfere with the Commission's choice of procedures "absent a manifest abuse of discretion or an unreasonable interpretation of the statutes governing its procedures[.]" (*Pacific Bell v. Public Utilities Com., supra,* 79 Cal.App.4th at p. 283.) In addition, if we conclude the Commission has failed to proceed in the manner required by law, we will annul its decision only if that failure was prejudicial. (See *Southern California Edison Co. v. Public Utilities Com.* (2006) 140 Cal.App.4th 1085, 1106.)

Under section 1757, subdivision (a)(4), we apply "familiar principles to review for substantial evidence." (*SFPP, L.P. v. Public Utilities Commission* (2013) 217 Cal.App.4th 784, 794.) We must consider all relevant evidence in the record, but it is for the Commission to weigh the preponderance of conflicting evidence. (*Ibid*.) "The 'in light of the whole record' language means that the court reviewing the agency's decision cannot just isolate the evidence supporting the findings and call it a day, thereby disregarding other relevant evidence in the record. [Citation.] Rather, the court must consider all relevant evidence, including evidence detracting from the decision, a task which involves some weighing to fairly estimate the worth of the evidence." (*Lucas Valley Homeowners Assn. v. County of Marin* (1991) 233 Cal.App.3d 130, 141-142 (*Lucas Valley*).) We may reverse the Commission's decision only if, based on the evidence before the Commission, no reasonable person could reach the conclusion it did. (*SFPP, L.P. v. Public Utilities Commission, supra,* 217 Cal.App.4th at p. 794.)

III.   *Hearsay Evidence Is Admissible in Commission Proceedings But Cannot Be the Sole Support for a Finding of Disputed Fact.*

The parties agree that the Rothleder Declaration and the Sutter Waiver Petition are hearsay evidence.[7]  (Evid. Code, § 1200, subd. (a) [defining hearsay evidence]; *Re Pacific Gas and Electric Company* (1986) 23 Cal.P.U.C.2d 352, 354 ["Documentary evidence that is introduced for the purpose of proving the matter stated in the writing is

---

[7] Neither the Commission nor PG&E claims these documents fall within an exception to the hearsay rule.

13

hearsay *per se* because the document is not a statement by a person testifying at the hearing."].)  The parties also agree that, as a general matter, hearsay evidence is admissible in Commission proceedings.  In addition, although they disagree about the significance of petitioners' lack of opportunity to cross-examine Rothleder or other CAISO officials, there is no dispute that the statements contained in the CAISO materials were not tested by cross-examination in this proceeding.

Consequently, the issue before us is a narrow one.  May the Commission base a finding of fact solely upon hearsay evidence where the truth of the extra-record statements is disputed?  The answer is no.

A.    *Standards Governing the Admission and Weight of Hearsay Evidence in Commission Proceedings*

The Commission's proceedings are governed by its rules of practice and procedure, "and in the conduct thereof the technical rules of evidence need not be applied."  (§ 1701, subd. (a); Rule 13.6(a).)  The Commission's own precedent establishes that hearsay evidence is admissible in its proceedings.  (See, e.g., *Investigation on the Commission's Own Motion Into the Fitness of the Officers, Directors, Owners and Affiliates of Clear World Communications Corporation* (Cal.P.U.C., June 16, 2005) Dec. No. 05-06-033 [2005 Cal. PUC LEXIS 221, at p. *81] (*Clear World Communications*); *Re Landmark Communications, Inc.* (1999) 84 Cal.P.U.C.2d 698, 701 (*Landmark Communications*).)  Administrative agencies like the Commission are given more latitude to consider hearsay testimony than are courts (*ibid*.), in part because "factfinders in administrative proceedings are more sophisticated than a lay jury[.]"  (*Re Pacific Gas and Electric Company, supra,* 23 Cal.P.U.C.2d at p. 354.)

"The Commission generally allows hearsay evidence if a responsible person would rely upon it in the conduct of serious affairs."  (*Landmark Communications, supra,* 84 Cal.P.U.C.2d at p. 701.)  The Commission may rely to some extent even on unverified prepared testimony, at least when it is submitted in anticipation of sworn oral testimony, and when due consideration is given to the fact that the sponsor of the testimony has not been subjected to cross-examination.  (*Re American Telephone and Telegraph Company*

14

(1994) 54 Cal.P.U.C.2d 43, 49.)  Hearsay evidence is given less weight, however, and if evidence is objectionable on hearsay grounds, "the Commission weighs it accordingly when all of the evidence in the case is reviewed."  (*Landmark Communications, supra,* 84 Cal.P.U.C.2d at p. 701.)

   B.   *Uncorroborated Hearsay Evidence Is Insufficient to Support a Finding of Fact.*

   "The admissibility and substantiality of hearsay evidence are different issues." (*Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 597.)  As the California Supreme Court has explained, "mere admissibility of evidence does not necessarily confer the status of 'sufficiency' to support a finding *absent other competent evidence*." (*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 538, fn. 3, italics added (*Daniels*).)  "There must be substantial evidence to support . . . a board's ruling, and hearsay, unless specially permitted by statute, is not competent evidence to that end." (*Walker v. City of San Gabriel* (1942) 20 Cal.2d 879, 881 (*Walker*), overruled on another ground in *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 37, 44.)

   California decisions adhere to the so-called "residuum rule," under which the substantial evidence supporting an agency's decision must consist of at least "a residuum of legally admissible evidence[.]"[8]  (1 Witkin, Cal. Evidence, *supra*, § 60, p. 72.)  A version of the rule has been codified in this state's Administrative Procedure Act, which provides:  "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection *shall not be sufficient in itself to support a finding* unless it would be admissible over objection in civil actions."  (Gov. Code, § 11513, subd. (d), italics added.)

   This provision of the Administrative Procedure Act does not apply to hearings before the Commission, and the agency has never expressly adopted the rules embodied

---

[8] Witkin calls hearsay falling within an exception to the hearsay rule "competent hearsay."  (1 Witkin, Cal. Evidence (5th ed. 2012) Introduction, § 67, p. 80.) "Incompetent hearsay" is hearsay evidence that would not be admissible over objection in a civil action.  (See *id*., § 68, at p. 81.)

in that statute. (§ 1701, subd. (b); *Re Pacific Gas and Electric Company, supra,* 23 Cal.P.U.C.2d at p. 354.) The Commission's decisions nevertheless follow the general rule stated in Government Code section 11513, subdivision (d) and articulated by the California Supreme Court in cases such as *Walker, supra,* 20 Cal.2d 879. For example, in *Clear World Communications, supra,* 2005 Cal. PUC LEXIS 221, at page *81, the Commission noted that "[w]hile hearsay is admissible in our administrative hearings, it cannot be the basis for an evidentiary finding without corroboration where the truth of the out-of-court statements is at issue. (Gov. Code § 11513(d).)" Consequently, hearsay is admissible in Commission proceedings, but it "may not be solely relied upon to support a finding[.]"[9] (*Re Communication TeleSystems International* (1996) 66 Cal.P.U.C.2d 286, 292, fn. 8.) Thus, like the California courts, the Commission has followed the residuum rule.

The residuum rule, and the California cases applying it, have been the subject of forceful criticism. (Collins, *Hearsay and the Administrative Process: A Review and Reconsideration of the State of the Law of Certain Evidentiary Procedures Applicable in California Administrative Proceedings* (1976) 8 Sw.U. L.Rev. 579, 591-598, 607-615.) The rule was abandoned in the federal courts after the United States Supreme Court's decision in *Richardson v. Perales* (1971) 402 U.S. 389. (See, e.g., *Johnson v. United States* (D.C. Cir. 1980) 628 F.2d 187, 190 ["We have rejected a per se approach that brands evidence as insubstantial solely because it bears the hearsay label."].) Thus, in a case upon which the Commission relies, the United States Court of Appeals for the District of Columbia Circuit rejected as unsupported the claim "that uncorroborated and untested testimony and hearsay testimony cannot constitute substantial evidence."

---

[9] The Commission does not appear to have concluded it may base a finding of fact solely upon uncorroborated hearsay evidence that does not fall within an exception to the hearsay rule. (See *Re Investigation into Possible Overassessment by the State Board of Equalization of Property Owned by Commission-regulated Utilities* (1998) 80 Cal.P.U.C.2d 685, 697, fn. 1 [declining to decide the question]; cf. *Re Pacific Gas and Electric Company, supra,* 23 Cal.P.U.C.2d at p. 354 ["We . . . have not reached the question of whether documentary evidence, standing alone, would provide legally sufficient evidence of a disputed fact necessary to support our decision."].)

(*Echostar Communications Corp. v. F.C.C.* (D.C. Cir. 2002) 292 F.3d 749, 753 (*Echostar*).)

As the foregoing discussion of California law makes clear, however, the Commission's reliance on *Echostar* is necessarily misplaced. Unlike federal law, under California statutory and decisional law, as well as the Commission's own decisions, uncorroborated hearsay cannot constitute substantial evidence to support an agency's decision absent specific statutory authorization.[10] (*Daniels, supra,* 33 Cal.3d at pp. 536-537; accord, *In re Lucero L.* (2000) 22 Cal.4th 1227, 1244 [citing *Walker* with approval].) This means that even if it was proper for the Commission to consider and rely upon the Rothleder Declaration and the Sutter Waiver Petition over the petitioners' procedural objections, its finding that the Oakley Project is needed cannot rest on those materials alone. Having clarified that this hearsay evidence may not serve as the sole factual basis for the Commission's finding, we now consider whether there is other competent, substantial evidence to support the Commission's decision.

---

[10] Since the Commission's own precedent holds that uncorroborated hearsay is insufficient to support a finding of disputed fact, it does not appear to claim it possesses such specific statutory authorization. We note that in response to petitioners' procedural arguments, the Commission and PG&E have relied on the following language of section 1701, subdivision (a): "No informality in any hearing, investigation, or proceeding or in the manner of taking testimony shall invalidate any order, decision or rule made, approved, or confirmed by the commission."

The California Supreme Court has required very explicit statutory authorization before permitting an agency's reliance on uncorroborated hearsay. For example, hearings in workers' compensation cases are governed by Labor Code section 5709, which provides: "No informality in any proceeding or in the manner of taking testimony shall invalidate any order, decision, award, or rule made and filed as specified in this division. *No order, decision, award, or rule shall be invalidated because of the admission into the record, and use as proof of any fact in dispute, of any evidence not admissible under the common law or statutory rules of evidence and procedure.*" (Italics added.) In *Daniels,* the court suggested that even this very broad statutory language "does not necessarily sanction sole reliance on uncorroborated hearsay." (*Daniels*, *supra*, 33 Cal.3d at p. 539, fn. 4.) We need not definitively resolve the issue, as the Commission's own rulings preclude reliance on uncorroborated hearsay to support a finding of fact.

17

IV.	*The Commission's Finding of Need Is Unsupported By Substantial Evidence.*

Petitioners contend the Commission's finding of need for the Oakley Project is unsupported by substantial evidence.  They concede hearsay evidence is admissible before the Commission, but they argue that the Rothleder Declaration and the Sutter Waiver Petition lack the "'satisfactory indicia of reliability'" that make reliance on hearsay evidence appropriate.  (See *Rehearing Decision,* at p. 7, quoting *Echostar, supra,* 292 F.3d at p. 753.)  In addition, they assert there is no corroborating evidence to support the Commission's finding that "the integration of the 33% RPS and phase-out of [OTC] plants creates the potential for a significant reliability risk before 2020."

In response, both the Commission and PG&E set forth lists of evidence they contend supports the Commission's finding of need.  In accordance with our standard of review, we will examine the cited evidence in light of all relevant evidence in the record.  (*Lucas Valley, supra,* 233 Cal.App.3d at p. 142.)

A.	*The Evidence Cited by the Commission*

We begin with the evidence upon which the Commission expressly relied.[11]  To support the finding of need, the *Oakley Decision* cited only the Sutter Waiver Petition and a statement by the CAISO's Chief Executive Officer, Steve Berberich.  (*Oakley Decision,* pp. 17-19.)  Acknowledging their hearsay nature, the Commission gave these materials "reduced weight," but it adjudged them to be "persuasive evidence" of the existence of a significant reliability risk.  (*Id.* at pp. 18-19; see *SFPP, L.P. v. Public Utilities Commission, supra,* 217 Cal.App.4th at p. 794 [Commission may weigh value of conflicting evidence].)

---

[11] The Commission's identification of the evidence upon which it relied in making findings of fact is helpful for purposes of judicial review, but there is no requirement that its decisions "contain a complete summary of all proceedings and evidence leading to the decision."  (*Toward Utility Rate Normalization v. Public Utilities Com.* (1978) 22 Cal.3d 529, 540.)  Our statutory standard of review requires us to evaluate the findings in the decision "in light of the whole record."  (§ 1757, subd. (a)(4).)  We therefore consider all record evidence, even if it was not specifically cited by the Commission.

Petitioners argue these hearsay materials are particularly unreliable based on a number of factors. Since the Commission has already recognized the materials are hearsay and has accorded them reduced weight, we need not determine whether they should be given *even less* weight because of the factors petitioners raise.[12] As explained in part III.B., *ante,* unless the CAISO materials are corroborated by other competent evidence, they do not constitute substantial evidence to support the Commission's decision. Thus, whatever evidentiary weight is due the CAISO materials, they cannot alone support the Commission's finding of need for the Oakley Project. (*Daniels, supra,* 33 Cal.3d at p. 538, fn. 3; *Clear World Communications, supra,* 2005 Cal. PUC LEXIS 221, at p. *81.)

As further support for the Commission's finding of need, the *Rehearing Decision* cited a passage from the District's Final Determination of Compliance for the Oakley Project. (*Rehearing Decision,* at p. 14.) The District stated: "The proposed facility will . . . provide energy-efficient electric generation capacity using new conventional generation technology, with operational flexibility to efficiently address grid fluctuations due to the intermittent nature of renewable generation such as wind and solar." This statement, however, says only that the Oakley facility would provide generation capacity to address *general* grid fluctuations due to the intermittent nature of renewable energy sources. It does not address the actual question posed in the Scoping Memo, which was "whether the Oakley project will meet a *specific, unique* reliability issue." (Italics added.) Moreover, the District's passing statement was made in the context of its analysis of "how the facility will comply with applicable air quality regulatory requirements[.]" The District was *not* analyzing the issue of need for the Oakley Project,[13] and its statement therefore does not support the Commission's finding on that

---

[12] Since we do not reach this issue, we deny as moot IEP's June 21, 2013 request for judicial notice.

[13] Indeed, while PG&E's prepared testimony cited this passage from the District's determination, it did so only in the chapter of its testimony addressing the Oakley Project's development and construction status, not in the chapter addressing the issue of need.

19

issue.  (See *City of Los Angeles v. Public Utilities Commission* (1972) 7 Cal.3d 331, 349 & fn. 11 (*City of Los Angeles*) [evidence did not support increase in cost of service where it addressed only cost of establishing new service in one city but not costs in cities where service was already established].)

The *Rehearing Decision* also quoted from the CEC's final permit decision on the Oakley Project.  (*Rehearing Decision,* p. 14.)  After acknowledging the intermittent nature of wind and solar power, the CEC noted, "in order to rely on such intermittent sources . . . , utilities must have available other, nonrenewable generating resources . . . that can fill the gap when renewable generation decreases. . . .  [¶] [The Oakley Project] is likely to serve as an important firming source for intermittent renewable resources in support of California's RPS and [greenhouse gas] goals."  The CEC explained, however, that its "siting process is not intended to determine market need for power plants.  That determination is made by the [Commission], which, in December 2010 approved the [PSA] between the Applicant and PG&E for the [Oakley] Project."  The CEC thus disclaimed any intention to determine whether the Oakley Project was needed, referring instead to the Commission's approval of the Oakley PSA in D. 10-12-050, the decision we annulled in *TURN I.*  In light of these limitations, the CEC's statement does not constitute substantial evidence to support the Commission's determination of need.  (Cf. *City of Los Angeles, supra,* 7 Cal.3d at p. 340 [where sole support for Commission decision was earlier decision annulled by Supreme Court, decision under review could not be sustained].)

B.    *Other Evidence*

In its answer, the Commission points to the testimony of a PG&E witness as support for the claim that "the Oakley Project can provide a significant contribution to the integration of the 33% RPS."  First, although the Commission has provided us with some excerpts of the reporter's transcript, the cited testimony does not appear to be among them.  Second, testimony about whether the Oakley Project can contribute to meeting a possible need does not support the claim that the need itself exists.  The remaining evidence cited in the Commission's answer addresses issues other than the Scoping

Memo's question about whether the Oakley Project is needed to address a specific, unique reliability issue. We find no support for the finding of need in this evidence.

PG&E's answer lists other items of evidence to support the Commission's finding of need, evidence not cited in the Commission's own answer. Much of the evidence simply refers to or relies on the CAISO's assessment of need. For example, the rebuttal testimony submitted by the Coalition of California Utility Employees and California Unions for Reliable Energy states, "The period during which there are *fears* that reliability needs *may occur* that a 2020 power plant cannot meet, *according to the* [*CAISO*], is every year from 2013 through 2019[.]" (Italics added.) The testimony makes no definitive statement that there will be reliability needs, but makes projections about "post-2016 Sutter costs" "*if* there are reliability needs in 2020 or before[.]" (Italics added.)

PG&E also cites its own testimony concerning the possible effect of the retirement of the San Onofre Nuclear Generation Station[14] and nonrenewal of the licenses for its Diablo Canyon nuclear power plant. But this testimony is based in significant part on the *possibility* that licenses for the latter plant will not be renewed in 2024 and 2025. PG&E claimed only that *if* its Diablo Canyon plant is not relicensed, there will be a greater need for new generation sources in Northern California.

PG&E also directs us to various attachments to DRA's testimony. Some of these are simply slides from a CAISO presentation showing how electrical generating capacity varies over the course of a day. They are thus both hearsay and unresponsive to the question of need. Another is a data response from PG&E concerning the Oakley Project's effect on the retirement of OTC facilities. It also fails to address the issue of need for the Oakley Project. Yet another is testimony PG&E and other utilities provided in the Commission's 2010 LTPP proceeding, but as explained earlier, in that proceeding

---

[14] Citing an online news release, rather than material in the Commission's record, PG&E tells us that Southern California Edison has announced plans to retire this plant. Even if we assume this is a fact subject to judicial notice, PG&E has not requested judicial notice of it.

21

PG&E joined a settlement in which it agreed that further analysis would be needed "'before any renewable integration resource need determination is made.'" (*Decision Approving Settlement, supra,* 2012 Cal. PUC LEXIS 192, at p. *8.) Finally, PG&E also cites a DRA cross-examination exhibit that consists of Rothleder's testimony in a separate Commission proceeding. This testimony does not appear to be sworn and is hearsay in any event. Furthermore, Rothleder states that the CAISO "recommends that the Commission's assessment of the need for new system resources to meet renewable integration needs should take place *in this docket during calendar year 2013* with a decision on system needs by December 2013." (Italics added.) Given that recommendation, this testimony would hardly seem to support a finding of need in *this* proceeding.

In sum, the materials identified by PG&E are either themselves based on CAISO's hearsay analysis or do not address the issue of need for the Oakley Project. They therefore cannot serve to corroborate the hearsay materials upon which the Commission relied to support its finding of need. Because the Commission's finding is based upon uncorroborated hearsay evidence, and the truth of the CAISO's extra-record statements is disputed, the finding cannot be sustained. (*Clear World Communications, supra,* 2005 Cal. PUC LEXIS 221, at p. *81; *Cleancraft, Incorporated v. San Diego Gas and Electric Company* (1983) 11 Cal.P.U.C.2d 975, 984 [party's claim could not rest on "the hearsay opinions of unavailable experts"].)

V. *TURN Has Not Demonstrated the Commission Failed to Proceed in the Manner Required by Law in Refusing to Apply the Requirements of D. 12-04-046 Retroactively.*

TURN contends the Commission failed to proceed in the manner required by law when it determined that the requirements for UOG procurement announced in the *Decision Approving Settlement* (D. 12-04-046) did not apply to PG&E's application in this proceeding. (See § 1757, subd. (a)(2).) Briefly summarized, in the *Decision Approving Settlement,* the Commission determined that "UOG procurement will be done through the certificate of public convenience and necessity (CPCN) process." (*Decision Approving Settlement, supra,* 2012 Cal. PUC LEXIS 192, at p. *46.) As the *Oakley*

22

*Decision* explains, "D. 12-04-046 bars UOG unless it is needed to meet the utility's authorized procurement due to a failed RFO." (*Oakley Decision,* p. 8.) The Commission declined to apply the requirements of that decision to the proposed Oakley PSA, however, because the decision had been adopted after PG&E filed its application in this proceeding. (*Ibid.*) Although TURN contends this was legal error, we conclude it has failed show the Commission committed a manifest abuse of discretion. (*Pacific Bell v. Public Utilities Com., supra,* 79 Cal.App.4th at p. 283.)

Initially, we observe that the argument in TURN's petition differs somewhat from the one it made in its application for rehearing before the Commission. (See § 1732 ["No . . . person shall in any court urge or rely on any ground not so set forth in the application [for rehearing]"].) There, TURN and WPTF conceded that "the failure to comply with the policy adopted in D. 12-04-046 may not represent legal error *per se*[.]" Nevertheless, they submitted that the Commission should have applied the requirements of that decision "as a matter of policy[.]" Given TURN's "shifting theories," we question whether this argument is properly before this court. (See *Utility Consumers' Action Network v. Public Utilities Com., supra,* 187 Cal.App.4th at p. 704.)

Even if this argument is properly before us, TURN's petition does not adequately explain what interests are prejudiced by the alleged error. (See *Southern California Edison Co. v. Public Utilities Com., supra,* 140 Cal.App.4th at p. 1106.) Perhaps more important, TURN's application for rehearing admits that this issue concerns a matter of policy. Where the Commission's decision is not "legally compelled" but rather involves a choice between competing policies, this court is not at liberty to interfere with it. (See *SFPP, L.P. v. Public Utilities Commission, supra,* 217 Cal.App.4th at p. 798.) We therefore reject TURN's argument.

DISPOSITION

Commission decision D. 12-12-035, as modified by D. 13-04-032, is annulled.

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

Robert E. Finkelstein for petitioner The Utility Reform Network.

Goodin, MacBride, Squeri, Day & Lamprey LLP, Robert A. Goodin, Brian T. Cragg, Suzy Hong, Megan Somogyi, for petitioner Independent Energy Producers Association.

Douglass & Liddell, Daniel W. Douglass, for petitioner Western Power Trading Forum.

Paul Clanon, Frank Lindh, Helen W. Yee, Jack M. Mulligan for respondent Public Utilities Commission.

Charles Middlekauf for real parties in interest Pacific Gas and Electric Company.

Latham & Watkins LLP, James L. Arnone and Laura A. Godfrey, for real parties in interest Pacific Gas and Electric Company and Contra Costa Generating Station, LLC.