Filed 9/26/14  Branch Banking & Trust v. PUC CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRANCH BANKING & TRUST et al.,<br>          Petitioners, | F068659 |
| v.<br>PUBLIC UTILITIES COMMISSION,<br>          Respondent;<br><br>GOLDEN HILLS SANITATION CO., INC. et al.,<br>          Real Parties in Interest. | **OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of review of decision of the Public Utilities Commission of the State of California.

Henderson Caverly Pum & Charney and Maria K. Pum; Douglass & Liddell and Donald C. Liddell for Petitioners.

Frank R. Lindh, Karen V. Clopton, Helen W. Yee, Monica McCrary and Sophia J. Park for Respondent.

Walter Wilhelm Law Group and Riley C. Walter for Real Parties in Interest.

-ooOoo-

The executors of the estates of two shareholders owning approximately 88 percent of the outstanding shares of the corporate owner and operator of a sewer system petitioned for review of an order by California's Public Utilities Commission (PUC or the

Commission) instituting an investigation and ordering them to show cause why the Commission should not petition the court for appointment of a receiver for the corporation. The order named the corporation and petitioners as respondents and imposed a temporary restraining order (TRO) requiring respondents to continue sewer service pending appointment of a receiver. Petitioners also petitioned for review of the order denying rehearing and modification of that order. We conclude petitioners were properly named as respondents and enjoined from terminating operation of the sewer system, and therefore affirm both orders.[1]

### *FACTUAL AND PROCEDURAL BACKGROUND*

Golden Hills Sanitation Company, Inc. (GHSC) is a California corporation that owns a small sewer system serving approximately 168 connections in the community of Golden Hills. In August 2008, GHSC, through its then-president, Carlie Smith, applied for a certificate of public convenience and necessity to continue operating the sewer system. The financial information submitted in connection with the application showed GHSC was operating at a loss, but initially requested a rate increase and expansion; in an amended application, which omitted the requests for a rate increase and expansion of its service area, Smith declared he was committed to paying GHSC's operating expenses, exclusive of catastrophic expenses, for a period of two years from September 2009. The application was granted in May 2010, almost five months after Smith's death. Smith's wife, Lillian, predeceased Smith. The estates of Smith and Lillian hold 211 of the 238

---

[1] We grant petitioners' July 31, 2014, motion to strike the Commission's July 2, 2014, submission of supplemental authority. Rule 8.254 of the California Rules of Court permits a party to submit new case law, statutory, or other similar authority after briefing has been completed if it was not available in time to be included in the party's last brief. The matter submitted by the Commission, which was a subsequent ruling made by the Commission in the same proceeding after briefing was complete, was not such legal authority and is not appropriate matter for submission after briefing.

outstanding shares in GHSC.[2]  Branch Banking and Trust (BB&T) is the domiciliary executor[3] of Smith's estate.  Linda Maycock is the executor of Lillian's estate.

In August 2011, GHSC applied to the Commission for authorization to increase its rates.  Customers of GHSC objected to the proposed rate increase.  On November 9, 2011, after Smith's two-year commitment to paying GHSC's operating expenses had expired, representatives of the PUC, the State Water Resources Control Board, and Kern County participated in a conference call with representatives of GHSC and the estates. BB&T advised that Smith's estate was insolvent and funding for GHSC's operational expenses could not continue.  GHSC's operator, Clint Hilderbrand, expressed concern GHSC would not be able to pay its operating expenses if its cash flow did not increase. GHSC and BB&T requested and were willing to stipulate to appointment of a receiver to take possession of GHSC.  The PUC representatives requested more time to resolve the issue and persuaded BB&T to provide short-term funding of operational expenses while it did so.

In December 2011, the Commission granted an expedited interim rate increase that was smaller than the increase requested.  BB&T offered to transfer GHSC to Kern County for no monetary consideration; in February 2012, Kern County declined the offer. Also in February, Hilderbrand, the day-to-day operator of the utility, demanded an increase in the monthly fee he was paid for that operation, to an amount greater than GHSC's monthly income.  BB&T then sent a letter to GHSC, stating that the estate's

---

**2**     Apparently, the Smiths and the executors of their estates had no contact information for the owner of the remaining shares, Golden Hills Land Company, Inc., and it did not participate in this proceeding or the events giving rise to it.

**3**     Smith was a resident of Kentucky at the time of his death.  The domiciliary estate is being administered in probate court in Kentucky, and includes all of Smith's personal property and all real property located in Kentucky.  Real property located in other states is the subject of ancillary probate proceedings in those states, including an ancillary proceeding in San Diego, California. Lillian's estate is being probated in Kentucky; her estate has no ancillary proceedings.

funding for GHSC would end February 29, 2012. As a result, GHSC sent a letter to its customers informing them it would cease operation on February 29, 2012.

On February 22, 2012, the assigned commissioner issued a TRO, requiring GHSC to continue to operate and provide sewer service to its customers until a receiver could be appointed. On March 8, 2012, the Commission entered its "Order Instituting Investigation … and Order to Show Cause" (*Matter of Golden Hills Sanitation Co.* (2012) Cal.P.U.C. Dec. No. 12-03-025 (hereafter OII/OSC or Decision 12-03-025); the order confirmed the TRO issued by the assigned commissioner, "requir[ing] the owners of [GHSC] to continue to provide sewer service to GHSC customers until a receiver is appointed."

On March 12, 2012, the assigned commissioner ordered the Commission's legal division to petition the superior court to appoint a receiver to operate GHSC. On March 29, 2012, the Kern County Superior Court appointed Clifford Bressler as receiver, to take possession of and operate GHSC.

GHSC and the executors of the estates of Smith and Lillian filed a petition for modification of the OII/OSC. They asserted the Commission erred by naming GHSC "and its owners" as respondents, and by directing service of the order on the executors, GHSC, and GHSC's attorney, to the extent the service list suggested the executors and the attorney were respondents. The petition argued the estates were not persons, public utilities, or sewer system corporations subject to the jurisdiction of the Commission. The petitioning parties requested that the OII/OSC be modified to delete the estates, the executors, and the attorney from the list of respondents in the order.

The Commission's Division of Water and Audits (DWA) and some customers opposed the petition for modification. GHSC and the executors also filed an application for rehearing of the OII/OSC decision, based on the same arguments. Again, the DWA and others filed opposition.

4

On May 23, 2013, the Commission issued its order modifying the OII/OSC decision and denying rehearing. (*Matter of Golden Hills Sanitation Co.* (2013) Cal.P.U.C. Dec. No. 13-05-037 (Decision 13-05-037).) It modified the decision by clarifying that GHSC's attorney was served only as its attorney, not as a respondent himself. Otherwise, the petition for modification and the application for rehearing were denied.

BB&T, as executor of Smith's estate, and Linda Maycock, as surviving executor of Lillian's estate, petitioned for a writ of review to review the Commission's OII/OSC and the May 24, 2013, order denying modification and rehearing. The petition was originally filed in the Fourth Appellate District; it was transferred to this court and we ordered the writ to issue.

## *DISCUSSION*

## I.    Writ of Review

A party aggrieved by a decision of the PUC may petition for a writ of review in the court of appeal. (Pub. Util. Code, § 1756, subd. (a).)[4] Before seeking judicial review, the party must apply for rehearing and raise in the application every issue the party intends to raise in the court of appeal. (*Ibid*.; §§ 1731, subd. (b)(1), 1732.) The court will review the matter to determine whether any of the following occurred:

> "(1)  The commission acted without, or in excess of, its powers or jurisdiction.
> "(2)  The commission has not proceeded in the manner required by law.
> "(3)  The decision of the commission is not supported by the findings.
> "(4)  The findings in the decision of the commission are not supported by substantial evidence in light of the whole record.
> "(5)  The order or decision of the commission was procured by fraud or was an abuse of discretion.

---

**4**     All further statutory references are to the Public Utilities Code unless otherwise indicated.

5

"(6)  The order or decision of the commission violates any right of the petitioner under the Constitution of the United States or the California Constitution."  (§ 1757, subd. (a).)

"The PUC is 'not an ordinary administrative agency, but a constitutional body with broad legislative and judicial powers.'  [Citation.]  The PUC's decisions are presumed valid." (*Southern Cal. Edison Co. v. Public Utilities Com*. (2000) 85 Cal.App.4th 1086, 1096.)  "The Commission's interpretation of its own rules and regulations 'is entitled to consideration and respect by the courts.'  [Citation.]  We will not interfere with the Commission's choice of procedures 'absent a manifest abuse of discretion or an unreasonable interpretation of the statutes governing its procedures.'  [Citation.]  In addition, if we conclude the Commission has failed to proceed in the manner required by law, we will annul its decision only if that failure was prejudicial.  [Citation.]" (*The Utility Reform Network v. Public Utilities Com.* (2014) 223 Cal.App.4th 945, 958.)

Where the sufficiency of the evidence to support the findings is in issue, "we use familiar principles to review for substantial evidence.  When an administrative agency's evidentiary findings are at issue, 'The court must consider all relevant evidence in the record, but "'[i]t is for the agency to weigh the preponderance of conflicting evidence [citation].  Courts may reverse an agency's decision only if, based on the evidence before the agency, a reasonable person could not reach the conclusion reached by the agency.'"  [Citation.]'  [Citation.]"  *SFPP, L.P. v. Public Utilities Com.* (2013) 217 Cal.App.4th 784, 794 (*SFPP*).)

"When constitutional issues are raised, we exercise independent judgment on the law and facts.  [Citation.]" (*SFPP, supra*, 217 Cal.App.4th at p. 794.)  "[W]here a Commission decision is challenged on the ground that it violates a constitutional right, the reviewing court must exercise independent judgment on the law and the facts and the Commission's findings or conclusions material to the constitutional question shall not be

6

final.  (*The Ponderosa Telephone Co. v. Public Utilities Com.* (2011) 197 Cal.App.4th 48, 56, citing § 1760.)

Petitioners contend the Commission acted without or in excess of its jurisdiction, failed to proceed in a manner required by law, and abused its discretion by naming petitioners as respondents in the OII/OSC and directing them to expend assets of the probate estate to fund GHSC, when the probate estates are under the jurisdiction of the probate courts.  They also contend some of the Commission's findings are not supported by substantial evidence, and the Commission's decisions violate the takings clause of the Fifth Amendment of the United States Constitution and the due process clauses of the Fourteenth Amendment and the California Constitution by denying GHSC a reasonable return on its investment and taking assets of the estates to fund the utility.

## II.    Takings Clause Violation

We briefly dispose of petitioners' final argument, that the Commission's decisions violate the takings clause.  "A party may not raise in court any matter that was not presented to the PUC on application for rehearing."  (*Hillsboro Properties v. Public Utilities Com.* (2003) 108 Cal.App.4th 246, 255, fn. 4; § 1732.)  This issue was not raised in petitioners' application for rehearing and is not properly before the court.  Accordingly, we do not consider it.

## III.   Parties to OII/OSC

Petitioners challenge the jurisdiction of the Commission to name them or the estates as respondents in the OII/OSC and to require them to fund the operation of GHSC.  They also contend the same actions constitute a failure to proceed in a manner required by law and an abuse of the Commission's discretion.  Petitioners assert "the Decisions do not merely commence an investigation into whether a receiver should be appointed.  Instead, the Decisions purport to require the estates to fund GHSC so long as the [PUC] deems necessary."  We disagree.

7

### A.      *Acting without or in excess of jurisdiction*

The OII/OSC, by its terms, gave notice of a hearing to consider whether the Commission should petition the superior court for appointment of a receiver for GHSC. It also ordered GHSC "and its owners" to continue providing sewer service to GHSC's ratepayers until a receiver was appointed.  Section 855 provides, in pertinent part:

> "Whenever the commission determines, after notice and hearing, that any water or sewer system corporation is unable or unwilling to adequately serve its ratepayers or has been actually or effectively abandoned by its owners, or is unresponsive to the rules or orders of the commission, the commission may petition the superior court for the county within which the corporation has its principal office or place of business for the appointment of a receiver to assume possession of its property and to operate its system upon such terms and conditions as the court shall prescribe."

The OII/OSC provided GHSC and its owners an opportunity to appear at the hearing and show cause why the Commission should not make findings that GHSC was unable or unwilling to adequately serve its ratepayers, had been actually or effectively abandoned by its owners, or was unresponsive to the rules and orders of the Commission. While petitioners concede the OII/OSC was properly directed to GHSC, they contend it should not have named petitioners as respondents because they were not public utilities over which the Commission had jurisdiction, and the shares of GHSC stock held by the estates were already subject to the jurisdiction of the probate court.

Neither the Public Utilities Code nor the regulations governing the Commission define "respondent" or identify the persons or entities who must or may be named as "respondents" in a proceeding before the Commission.  Section 216 defines the term "public utility," and provides that a public utility is "subject to the jurisdiction, control, and regulation of the commission." (§ 216.)  "'Public utility' includes every … sewer system corporation … where the service is performed for … the public or any portion thereof." (§ 216, subd. (a).)  "'Sewer system' includes all real estate, fixtures, and personal property owned, controlled, operated, or managed in connection with or to

8

facilitate sewage collection, treatment, or disposition for sanitary or drainage purposes ….” (§ 230.5.) “‘Sewer system corporation’ includes every corporation or person owning, controlling, operating, or managing any sewer system for compensation within this state.” (§ 230.6.)

Using these definitions, petitioners assert GHSC is the sewer system corporation that owns the sewer system in issue; they, as executors of the estates holding shares in the corporation, do not own a sewer system and are not a sewer system corporation. Accordingly, they conclude, they are not a public utility subject to jurisdiction of the Commission. The jurisdiction of the Commission is not limited strictly to public utilities, however. “The PUC is constitutionally vested with the authority to regulate public utilities. [Citation.] … The California Constitution, however, also provides that ‘[t]he Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, *to confer additional authority and jurisdiction upon the commission ….*’ [Citation.] As our Supreme Court has recognized, citing the Legislature’s plenary power to confer additional jurisdiction on the PUC, ‘[t]he commission’s powers … are not restricted to those expressly mentioned in the Constitution.’ [Citation.]” (*PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1197 (*PG&E*).) “Section 701 is of particular relevance because it allows the PUC to ‘do all things … necessary and convenient’ in the exercise of its authority over public utilities whether or not ‘specifically designated’ in the Public Utilities Code. Where the authority sought is ‘cognate and germane’ to utility regulation, the PUC’s authority under section 701 has been liberally construed. [Citations.]” (*PG&E, supra,* at p. 1198.)[5] The Commission’s authority to “‘do all things … necessary

---

[5] Section 701 provides: “The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction.”

and convenient'" in the exercise of the power to supervise and regulate public utilities is not expressly limited to actions against public utilities. (*Ibid*.)

Public utilities are required to "furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities … as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public." (§ 451.) The Commission is authorized to seek a receiver for a sewer system corporation that is unable or unwilling to serve its ratepayers or is abandoned by its owners. (§ 855.) On or about February 21, 2012, GHSC sent notice to its ratepayers that it intended to cease operation on February 29, 2012. It explained the reason for ceasing operation was that GHSC lacked sufficient revenue to continue, and did not expect a decision on its application for a rate increase until October at the earliest. The notice also stated GHSC had been unable to find a public or private entity willing to accept transfer of the utility and continue service. In response to this notice, the assigned commissioner issued a TRO, requiring GHSC "to continue to operate and provide sewer service until such time as a receiver is assigned to operate the utility." The order also stated "[t]he current owners and operators of GHSC may not abandon their responsibility to serve GHSC's customers" and "the owners and operators of GHSC must continue to provide sewer service to GHSC's customers until a receiver is appointed."

The OII/OSC confirmed the assigned commissioner's TRO, which prohibited GHSC from ceasing operation and required GHSC and its owner to continue sewer service to customers until a receiver was appointed. The OII/OSC was directed to GHSC and its owners, and referred to them as respondents. The order denying rehearing[6] concluded the owners of GHSC were properly named as respondents in the proceeding, because there was good cause for doing so.

---

[6]    Decision 13-05-037.

10

When the representative of the Commission seeks to add a party as a respondent in an OII, and that party asserts lack of subject matter jurisdiction, the Commission has held that the test is whether there was good cause to add the party as a respondent. (*In re Coral Communications, Inc*. (1999) 86 Cal.P.U.C.2d 14 (*Coral Communications*).) Recognizing that neither the Public Utilities Code nor the Commission's rules of practice and procedure (Cal. Code Regs., tit. 20, §§ 1.1-88) "define 'good cause,' [the Commission defined it] very generally as an adequate cause that comports with the purposes of the Public Utilities Code and with other laws. The Commission will look for a factual basis and a good reason to add respondents under the circumstances of each particular OII." (*Coral Communications, supra*, 86 Cal.P.U.C.2d 14.) The Commission noted the OII merely commences the proceedings, and jurisdictional issues will be resolved after a later hearing. (*Ibid*.)

Similarly, here, the Commission commenced a proceeding by issuing its OII/OSC and serving the parties it believed had an interest in the outcome. It indicated the purpose of the proceeding was to determine whether the situation warranted petitioning the court for appointment of a receiver to take possession of GHSC and operate its sewer system. In a conference call in November 2011, representatives of the estates had already indicated their interest in the issue by discussing with PUC representatives the need for appointment of a receiver; petitioners assert both GHSC and the executors were willing at that time to stipulate to appointment of a receiver. Pursuant to section 855, certain findings were required before the Commission could petition for appointment of a receiver. Through the OII/OSC, the Commission gave petitioners notice of the scheduled hearing and afforded them an opportunity to show cause why the Commission should not find GHSC was unable or unwilling to adequately serve its ratepayers, had been abandoned by its owners, or was unresponsive to the rules and orders of the Commission, warranting appointment of a receiver.

11

Because of the estates' financial support of GHSC and their participation in the effort to obtain appointment of a receiver, the Commission had good cause to name the executors as respondents in the OII/OSC. As holders of approximately 88 percent of the shares of GHSC, the executors had a financial interest in the operation of the corporation; that operation would be affected by the appointment of a receiver.

Further, although the shareholders of a corporation may not control the day-to-day business of the corporation, they may control decisionmaking on fundamental matters, such as cessation of operations or transfer of ownership. Representatives of the estates participated in efforts to find a new owner, public or private, to which to transfer GHSC; in January 2012, BB&T offered GHSC to Kern County for no monetary consideration. After that offer was refused, the estates gave notice to GHSC that they would no longer provide funding for its operations; GHSC gave notice to its ratepayers that it would cease operations. Minutes of a meeting of shareholders of GHSC held on February 1, 2012, indicate the shareholders approved allowing GHSC to hire attorneys to commence a bankruptcy proceeding, negotiate transfer of assets or stock of GHSC to a new owner, or shut down the sewage treatment facility owned by the corporation, subject to consent of a majority of the shareholders. Under these circumstances, the Commission had good cause to add the executors of the estates as respondents in the OII/OSC issued for the purpose of determining whether the Commission should petition the court for appointment of a receiver to take charge of GHSC and ensuring that service to the ratepayers continued in the interim.

The Commission also had good cause to include the owners of GHSC in the TRO requiring GHSC and its owners "to continue to provide sewer service to GHSC customers until a receiver is appointed." The purpose of the TRO was simply to preserve the status quo until the Commission could file its petition for appointment of a receiver and the court could act. Contrary to petitioners' assertions, the OII/OSC did not order the executors to fund the operations of GHSC. The Commission had already approved an

12

interim rate increase which it believed would cover GHSC's essential expenses. The TRO simply required the executors, as owners of GHSC, to refrain from causing GHSC to cease operations before a receiver was appointed.

The limited scope of the OII/OSC is also demonstrated by the terms of the Commission's subsequent order. On September 13, 2012, the Commission issued *Matter of Golden Hills Sanitation Co.* (2012) Cal.P.U.C. Dec. No. 12-09-006 which affirmed the order for an interim rate increase and the order for the Commission's legal department to petition the superior court for appointment of a receiver. Decision 12-09-006 "den[ied] with prejudice Adrian Maaskant's request to explore the responsibilities and liabilities of the Estates of Carlie and Lillian Smith because this issue is outside the scope of the consolidated proceedings."[7] Thus, the Commission clarified that it was not making any determination about the liability of the estates or their executors for the costs of continuing to operate the sewer system or GHSC; the TRO merely prevented the owners of the corporation from causing it to cease its operations while proceedings for appointment of a receiver were pending.

Because the Commission's orders did not require the executors to use assets of the estates to finance the operations of GHSC, there was no interference with the jurisdiction of the probate court. For the same reason, there was no need to file a claim against the estates in the probate proceedings. Further, the Commission did not hold shareholders liable for the debts of the corporation as petitioners contend. Petitioners' argument that these actions were taken without or in excess of jurisdiction is without merit.

Petitioners also contend the OII/OSC was without or in excess of the Commission's jurisdiction because it named the estates as respondents, respondents must be "persons" (see Cal. Code Regs., tit. 20, § 1.4, subd. (d)), and estates are not "persons."

---

**7** On behalf of several of GHSC's customers, Adrian Maaskant filed papers in the Commission's proceedings, commenting on the commissioner's proposed actions, opposing various petitioners' requests to the Commission, and attempting to obtain discovery.

"An 'estate' is not a legal entity and is neither a natural nor artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent …. An 'estate' can neither sue nor be sued." (*Estate of Bright v. Western Air Lines, Inc*. (1951) 104 Cal.App.2d 827, 828-829.) The OII/OSC, however, was not directed to, and did not enjoin, the "estates" of Smith and Lillian. Rather, it was directed to the "owners" of GHSC. The shares owned by the Smiths during their lifetimes are currently held in their estates, administered by the executors who, for our purposes, stand in the shoes of the owners until the shares are distributed to new owners or disposed of in some other fashion. The service list included in the order listed each estate, its executor, and the address for service. Thus, we construe the OII/OSC to be directed to the executors of the estates. The order denying rehearing discussed whether the "estates" were properly named as respondents because petitioners' petition for modification and application for rehearing both challenged inclusion of the "estates" as respondents.

Petitioners have not demonstrated that the Commission acted without or in excess of its jurisdiction by including them as respondents in the OII/OSC and entering the TRO requiring them, as owners, to continue operation of GHSC until a receiver was appointed, rather than allowing GHSC to cease operation as announced.

### B.    *Failing to proceed in the manner prescribed by law*

Petitioners contend the TRO sought to compel the estates to fund GHSC, giving rise to a claim against the estates, which the Commission failed to pursue in probate court in accordance with Kentucky law. The TRO did not compel the estates to fund GHSC, however, so no claim against the probate estate was necessary in order to proceed in the manner prescribed by law. Petitioners have not shown the Commission failed to proceed in the manner prescribed by law.

14

## C. *Abuse of discretion*

Petitioners assert the Commission abused its discretion by ignoring probate claims procedures and compelling the executors to divert estate assets to fund GHSC. The Commission's decision did neither, and no abuse of discretion is established.

## D. *Findings not supported by substantial evidence*

Petitioners contend the Commission's reliance, in its denial of rehearing and modification,[8] on the declaration of Cody Tellis was misplaced, and the declaration did not constitute substantial evidence in support of the decision. The Commission found good cause to name petitioners as respondents in the OII/OSC, based in part on evidence of a business relationship between the petitioners and GHSC. Part of that evidence was the Tellis declaration.

The Tellis declaration was executed January 20, 2010, less than a month after Smith's death, apparently in connection with GHSC's application for a certificate of public convenience and necessity. It identified Tellis as vice president of the Wealth Management Trust Department of BB&T, husband of a granddaughter of Carlie and Lillian Smith, trustee of a trust created by Smith, and anticipated executor of Smith's estate. It also asserted the executors of Lillian's estate "delegated to [him] representation of her Estate in regard to business matters." Tellis declared that he, "as representative of both Estates, [had] the same powers that Mr. and Mrs. Smith had as shareholders of [GHSC]." He stated the estates were "committed to continue paying for a minimum of two years after September 2009 the operating expenses of [GHSC]."

Petitioners argue that Tellis was not appointed executor of Smith's estate and was not trustee of any trust created by Smith. They assert Tellis did not act on behalf of the estates or their executors, although he did serve as president of GHSC. In light of these

---

[8] Decision 13-05-037.

facts, petitioners assert there was no basis for the Commission to conclude they managed, operated, or controlled GHSC.

As discussed previously, however, there was evidence the executors of the estates together hold approximately 88 percent of the outstanding shares of GHSC's stock. Representatives of the estates participated in efforts to find a buyer or transferee to take possession of and operate the sewer system or the corporation. The executors held a shareholders' meeting and voted to authorize GHSC to file bankruptcy proceedings, transfer ownership of GHSC to a new owner, or cease operation. Thus, regardless of the representations made in the Tellis declaration, there was substantial evidence to support the Commission's finding that there was good cause to name the executors of the estates as respondents in the OII/OSC, the purposes of which were to determine whether a receiver should be appointed and to prevent cessation of sewer service to GHSC's ratepayers pending such an appointment. Petitioners have not established that substantial evidence in support of the Commission's decision was lacking.

## *DISPOSITION*

The Commission's OII/OSC (Decision 12-03-025) and its order denying rehearing and modification (Decision 13-05-037) are affirmed. The Commission shall recover its costs in this proceeding.

_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
FRANSON, J.

16